1  CLARKE B. HOLLAND (SBN 76805)
   cholland@plawp.com
2  DAVID B.A. DEMO (SBN 153997)
   ddemo@plawp.com
3  ANDREW P. COLLIER (SBN 232647)
   acollier@plawp.com
4  PACIFIC LAW PARTNERS, LLP
   2000 Powell Street, Ste. 950
5  Emeryville, CA  94608
   Tel:  (510) 841-7777
6  Fax:  (510) 841-7776

7  R. LIND STAPLEY (Request to Admit Pro Hac Vice to be Filed)
   stapley@sohalang.com
8  Soha & Lang, P.S.
   1325 Fourth Ave., Ste 2000
9  Seattle, WA  98101-2570
   (206) 624-1800
10 (206) 624-3583 (fax)

11 Attorneys for Defendant
   OREGON MUTUAL INSURANCE COMPANY
12

13              UNITED STATES DISTRICT COURT

14           NORTHERN DISTRICT OF CALIFORNIA

15              SAN FRANCISCO DIVISION

16

17 STEVEN BAKER AND MELANIA KING          ) Case No.:  3:20-cv-05467-LB
   D/B/A CHLOE'S CAFÉ, a California general )
18 partnership, individually and on behalf of )
   themselves and all others similarly situated, ) **DEFENDANT OREGON MUTUAL**
19                                          ) **INSURANCE COMPANY'S NOTICE OF**
                                            ) **MOTION TO DISMISS COMPLAINT**
20              Plaintiffs,                 ) **UNDER RULE 12(b)(6), AND IN THE**
                                            ) **ALTERNATIVE, MOTION FOR**
21     vs.                                  ) **SUMMARY JUDGMENT UNDER RULE**
                                            ) **56**
22 OREGON MUTUAL INSURANCE               )
   COMPANY, an Oregon Corporation,          ) **[Fed. R. Civ. Pro. 12(b)(6) and 56]**
23                                          )
                                            )
24              Defendant.                  ) Date:      December 3, 2020
                                            ) Time:      9:30 a.m.
25                                          ) Location:  Magistrate Judge
                                            )            Laural Beeler, Via Webinar
26 _____)

27 / / /

28 / / /

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

1

## TABLE OF CONTENTS

2

Page No.

3     TABLE OF AUTHORITIES ....................................................................................... ii

4     I.      RULE 12(b)(6) ................................................................................................ 2

5     II.     RULE 56 ......................................................................................................... 2

6     III.    MATERIAL ALLEGATIONS ........................................................................ 3

7     IV.     RELEVANT POLICY PROVISIONS ............................................................ 7

8     V.      THE CLAIM IS NOT COVERED AS A MATTER OF LAW ...................... 10

9             A.      Plaintiffs' Allegations Show There Is No Coverage ........................... 10

10            B.      Claim Does Not Fall Within The "Business Income" Insuring Agreement ........ 10

11                    1.      *No Direct Physical Loss Of Or Damage To Property
                              At Chloe's Cafe* ...................................................................... 10

12

13                    2.      *No Physical Change In Condition Of Property* ..................... 13

                      3.      *"Period of Restoration" Definition Anticipates Physical Damage* ......... 15

14
                      4.      *No Casual Link Between Direct Property Damage And Loss Of
15                            Income* .................................................................................... 15

16            C.      The Claim Does Not Fall Within The "Civil Authority" Insuring Agreement.... 16

17                    1.      *The Closure Orders Were Not Issued Due to Direct Physical Loss* ........ 16

18                    2.      *Mayor Breed's April 30 Order Is A Red Herring* ................... 17

19                    3.      *The Closure Orders Did Not Prohibit Access To Chloe's Cafe* ............. 19

20            D.      Plaintiffs' Claim Is Also Excluded ...................................................... 19

21            E.      The Court Should Dismiss Or Grant Summary Judgment.................... 20

22    VI.     MOST TRIAL COURTS ARE REJECTING COVID-RELATED CLAIMS ............... 20

23    VII.    CONCLUSION............................................................................................... 25

24

25

26

27

28

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

1

## TABLE OF AUTHORITIES

2

**CASES**                                                                 **PAGE NO.**

3

*10E, LLC v. Travelers Indem. Co. of Connecticut*
4   (C.D. Cal. 20020) WL 5359653 ........................................................................ 21, 22

5

*Cahill v. Liberty Mut. Ins. Co.*
6   (9th Cir. 1996) 80 F.3d 336 ................................................................................ 2

7

*Dickie Brennan & Co.  v. Lexington*
8   (5th Cir. 2011) 636 F.3d 683 ........................................................................... 2, 17

9

*Diesel Barbershop, LLC et al v. State Farm Lloyds*
10   (W.D. Texas 2020) WL 4724305 ...................................................................... 24

11

*Franklin EWC, Inc. et al v. The Hartford Financial Services Group*
12   (N.D. CA 2020) WL 5642483 ........................................................................... 24

13

*Gavrilides Management Co. v. Michigan Ins. Co.*
14   (Mich. Cir. Ct., Ingham, July 1, 2020)............................................................... 24

15

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*
16   (9th Cir. 1989) 896 F.2d 1542 .......................................................................... 2

17

*Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of America*
18   (N.D. Georgia, Oct. 6, 2020) 2020 WL 5938755 ............................................... 24

19

*Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known As Syndicate 4000 et al.*
20   (M.D. Fla., Sept. 28, 2020) 2020 WL 5791583 ................................................. 24

21

*It's Nice, Inc. v. State Farm Fire and Cas. Co.*
22   (Ill. Cir. Ct. of 18th Cir., Du Page County, Sept. 29, 2020) No. 2020L000547 ...................... 24

23

*Lesnik v. Eisenmann SE*
24   (N.D. Calif. 2019) 374 F.Supp.3d 923................................................................. 3

25

*Luna v. Kemira Specialty, Inc.*
26   (C.D. Cal. 2008) 575 F.Supp.2d 1166 ............................................................... 2

27

*Malube, LLC v. Greenwich Insurance Company*
28   (S.D. Fla., Aug. 26, 2020) WL 5051581 ............................................................ 24

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

*Mama Jo's, Inc.  v. Sparta Ins. Co.*
    (D.C. Docket No. 1:17-cv-23362-KMM August 18, 2020)  .................................... 14

*Mark's Engine Company No. 28 Restaurant, LLC v. The Travelers Indemn. Co. Of Connecticut, et al.*
    (C.D. Cal., Oct. 2, 2020) WL 5938689 ....................................................................... 22

*Mauricio Martinez, DMD, P.A.  v. Allied Insurance Company of America*
    (M.D. Fla., Sept. 2, 2020) WL 5240218 ...................................................................... 24

*Minkler v. Safeco*
    (2010) 49 Cal.4th 315 ................................................................................................. 10

*MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.*
    (2010) 187 Cal.App.4th 766 ............................................................................ 1, 11, 23

*Mudpie, Inc. v. Travelers Casualty Insurance Company of America*
    (N.D. Cal. Sept. 14, 2020) WL 5525171 ............................................................. 20, 21

*Newman Myers Kreines Gross Harris, P.C, v, Great Northern Ins. Co.*
    (S.D.N.Y. 2014) 17 F.Supp.3d 323 ............................................................................ 11

*Northrup Grumman Corp. v. Factory Mut. Ins. Co.*
    (C.D. Cal. July 31, 2013) 2013 WL 3946103 ......................................................... 2, 16

*Oral Surgeons, P.C. v. Cincinatti Ins. Co.*
    (S.D. Iowa, Sept. 29, 2020) 2020 WL 5820552 ........................................................ 24

*Pappy's Barber Shops, Inc. et al. v. Farmers Group, Inc.*
    (S.D. Cal. Sept. 11, 2020) 2020 WL 5500221 ............................................................

*Philadelphia Parking Authority v. Federal Ins. Co.*
    (S.D.N.Y, 2005) 385 F.Supp.2d 280 ....................................................... 12, 15, 19

*Rose's 1, LLC, et al. v. Erie Insurance Exchange*
    (DC Superior Court Aug. 6, 2020) 2020 CA 002424 B ....................................... 24

*Sandy Point Dental, PC v. The Cincinnati Insurance Company*
    (E.D. Ill, Sept. 21, 2020 2020 WL 5630465 .......................................................... 24

*Source Food Technology, Inc. v. U.S. Fidelity and Guar. Co.*
    (8th Cir. 2006) 465 F.3d 834 .............................................................. 1, 13, 17

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA  94608
(510) 841-7777 - Facsimile (510) 841-7776

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

*St. Paul Mercury Ins. Co. v. Ralee Eng'g Co.*
  (9th Cir. 1986) 300 F.3d 750 ............................................................................ 10

*Syufy Enterprises v. Home Ins. Co. of Indiana*
  (N.D. Cal. March 21, 1995) 1995 WL 129229 ......................................... 2, 19, 21

*The Inns By the Sea v. California Mutual Insurance Company*
  (Calif. Superior Ct., Monterey County, Aug. 6, 2020) ...................................... 24

*Thompson v. Illinois Dept. of Professional Regulation*
  (7th Cir. 2002) 300 F.3d 750 .............................................................................. 2

*Turek Enterprises, Inc. v. State Farm Mutual Automobile Insurance Company*
  (N.D. Mich., Sept. 3, 2020) 2020 WL 5258484 ................................................ 24

*United Air Lines, Inc. v. Insurance Co. of the State of Pennyslvania*
  (2d Cir. 2006) 439 F.3d 128 ......................................................................... 2, 17

*Universal Image Productions, Inc. v. Federal Ins. Co.*
  (6th Cir. 2012) 474 Fed.Appx.569 .................................................................... 14

*Waller v. Truck Insurance Exchange, Inc.*
  (1995) 11 Cal.4th 1 ............................................................................................ 10

*Wilson v. Hartford Casualty Co.*
  (E.D. Penn., Sept. 30, 2020) 2020 WL 5820800 .............................................. 24

**STATUTES**

Federal Rule of Civil Procedure 10(c) ................................................................... 2

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

## MOTION TO DISMISS (OR FOR SUMMARY JUDGMENT)

Please take notice that, at the time and date above, defendant Oregon Mutual Insurance Company ("OMI") will move that the Court dismiss the Class Action Allegation Complaint of plaintiffs Steven Baker and Melania King d/b/a Chloe's Café ("Complaint") (Doc. 1), for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. Pro. 12(b)(6) ("Rule 12(b)(6)"). Because this motion attaches evidence that is extrinsic to the Complaint, in the alternative OMI will move this Court for summary judgment in its favor pursuant to Fed. R. Civ. Pro. 56 ("Rule 56"); although because such extrinsic evidence is referred to in the Complaint, integral to and embraced by plaintiffs' claims, and/or a matter on which the court may take judicial notice, the Court may not be required to consider this as a Rule 56 motion.

## SUMMARY OF MOTION

Steven Baker and Melania King d/b/a Chloe's Café (together, "plaintiffs" or "Chloe's Café") operated a San Francisco restaurant whose business was economically affected by San Francisco's COVID-19 governmental closure orders. Plaintiffs, who had a commercial property insurance policy issued by defendant OMI ("Policy"), submitted a claim seeking coverage for lost income caused by their compliance with the orders.

The OMI Policy only covers loss of business income if a "Covered Cause of Loss" caused "direct physical loss or damage," which in turn caused a suspension of the insured's business operations, which caused the loss of income. OMI denied plaintiffs' claim because their loss of income does not meet these contractual criteria. In this diversity action, plaintiffs are now suing OMI, seeking a declaratory judgment (on behalf of themselves and the putative class members) that they are entitled to coverage under the OMI Policy for lost income caused by their compliance with the orders.

OMI requests dismissal of the Complaint under Rule 12(b)(6) (alternatively, summary judgment under Rule 56) because plaintiffs' allegations show that their loss of income was not caused by distinct, demonstrable, physical alteration of property for coverage. *MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.,* 187 Cal.App.4th 766 (2010); *Source Food Technology, Inc. v. U.S. Fidelity and Guar. Co.*, 465 F.3d 834 (8th Cir. 2006). Nor is there

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA  94608
(510) 841-7777 - Facsimile (510) 841-7776

1   a causal link between physical damage and the loss of income.  *United Air Lines, Inc. v.*

2   *Insurance Co. of the State of Pennsylvania*, 439 F.3d 128 (2d Cir. 2006); *Dickie Brennan & Co.*

3   *v. Lexington Ins. Co.,* 636 F.3d 683 (5th Cir. 2011); *Syufy Enterprises v. Home Ins. Co. of*

4   *Indiana,* 1995 WL 129229 (N.D. Cal. March 21, 1995); *Northrup Grumman Corp. v. Factory*

5   *Mut. Ins. Co.*, 2013 WL 3946103 (C.D. Cal. July 31, 2013).

6   **POINTS AND AUTHORITIES**

7   **I.     RULE 12(b)(6)**

8        Federal Rule of Civil Procedure Rule 12(b)(6) empowers the Court to dismiss a

9   complaint that fails to state a claim upon which relief can be granted.  On a motion to dismiss for

10  failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as

11  true and construed in the light most favorable to the nonmoving party.  *w v. Liberty Mut. Ins.*

12  *Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  The court "need not, however, accept as true

13  unreasonable inferences or conclusory legal allegations cast in the form of factual allegations."

14  *Luna v. Kemira Specialty, Inc.*, 575 F.Supp.2d 1166, 1176 (C.D. Cal. 2008).

15       The complaint's exhibits are part of the pleading, and a court may consider them on a

16  motion to dismiss.  Fed. R. Civ. Proc. 10(c); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*,

17  896 F.2d 1542, 1555, n. 19 (9th Cir. 1989).  "[W]here a plaintiff attaches documents and relies

18  upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the

19  document negates the claim." *Thompson v. Illinois Dept. of Professional Regulation*, 300 F.3d

20  750, 754 (7th Cir. 2002).  In other words, "the exhibit trumps the allegations." *Id.*

21  **II.    RULE 56**

22       This motion is supported by exhibits that contain information extrinsic to the contents of

23  the Complaint.  Exhibits 1, 2, 3, 4 and 6 are copies of the governmental orders discussed by

24  plaintiffs in the Complaint; OMI files concurrently herewith a request that the court take judicial

25  notice of those public records.  Exhibit 5 is a complete copy of the Policy under which plaintiffs

26  submitted their loss of income claim which is the subject of this action; OMI is compelled to

27  include the complete policy as a separate attachment to this motion because Exhibit A which

28

plaintiffs attach to their Complaint is incomplete - it omits entirely the central 39-page "Businessowners Coverage Form" that sets out the specific coverages squarely at issue here.

Fed. R. Civ. Pro. 12(d) provides that, if on a Rule 12(b)(6) motion, matters outside the pleading are presented to the court and not excluded, the motion is to be treated as one for summary judgment under Rule 56.  However, there is an exception to requiring treatment as a Rule 56 motion where the extrinsic matters presented are integral to plaintiff's claims.  *Lesnik v. Eisenmann SE*, 374 F.Supp.3d 923, 936 (N.D. Calif. 2019).  In such case, the court need not treat the matter as a Rule 56 motion.

Here, the exhibits attached in support of this motion are central to plaintiffs' claims and should be accepted by the Court without requiring treatment as a Rule 56 motion.  Exhibits 1 and 2 are orders issued by Governor Newsom regarding the COVID-19 pandemic; the Complaint references the Governor's orders repeatedly.  (Doc. 1, pp. 7-9, ¶¶ 34, 36, 37-39, 43, 45.).  Exhibits 3, 4 and 6 are similar governmental orders issued through the City and County of San Francisco; the Complaint also discusses those orders in detail.  (Doc. 1, pp. 7-9, ¶¶ 34, 36, 39, 41, 43, 45.).  Exhibit 5 is a complete copy of the entire Policy under which plaintiffs' insurance claim was submitted; the Complaint of course contains many references to the operative provisions of the Policy upon which plaintiffs rely in support of their claim.  (Doc. 1, pp. 4-6, 9, ¶¶ 11-25, 48-50.).

For these reasons, the Court need not treat this matter as a motion under Rule 56.

## III.    MATERIAL ALLEGATIONS

The following allegations are taken from the Complaint, including its exhibits.  Steven Baker and Melanie King are co-owners of a small business, "Chloe's Café," located in San Francisco.  (Doc. 1, p. 3, ¶ 4.)  Plaintiffs explain that COVID-19 is a novel coronavirus that originated in China at the end of 2019 and rapidly spread around the world, affecting millions of people, including over 2.15 million Americans and causing the deaths of over 150,000 Americans.  (Doc. 1, p. 6, ¶ 26.)  They assert that COVID-19 is highly contagious and easily communicable.  (Doc. 1, p. 6, ¶ 27.)  The Complaint further states that the Center for Disease

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA  94608
(510) 841-7777 - Facsimile (510) 841-7776

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

1   Control recommended that people not gather in groups larger than 10 because of the increased

2   danger of contracting COVID-19 in places where people congregate.  (Doc. 1, p. 7, ¶ 30.)

3           Plaintiffs further claim that the presence of COVID-19 has caused civil authorities

4   throughout the country to issue orders requiring the suspension of businesses at a wide range of

5   establishments (the "Closure Orders").  (Doc. 1, p. 7, ¶ 34.)  They note that, in response to the

6   public health emergency caused by the COVID-19 pandemic, civil authorities with jurisdiction

7   over plaintiff in California have issued various Closure Orders which have prohibited access to

8   plaintiffs' insured property and that of other putative class members.  (Doc. 1, p. 7, ¶ 36.)

9           According to the Complaint, the "Closure Orders of civil authorities prohibited access to

10  Plaintiff and other class members' Insured Properties, and the areas immediately surrounding the

11  Insured Properties."  (Doc. 1, p. 9, ¶ 45.)  Plaintiffs assert that as "a result of the presence of

12  COVID-19 and the Closure Orders, Plaintiff and other class members sustained a suspension of

13  business operations" and sustained business income losses.  (Doc. 1, p. 9, ¶ 46.)

14          In an effort to create coverage under the OMI Policy where none exists, the Complaint

15  obfuscates the pertinent facts surrounding the operative Closure Orders and fails to identify

16  which particular governmental orders affected businesses in San Francisco such as Chloe's Café.

17  Plaintiffs attempt to suggest that the Closure Orders were issued because of some sort of actual

18  physical damage to property that somehow resulted from COVID-19 (see Doc. 1, p.8, ln. 6-7,

19  17.)  However, public records show that, effective March 17, 2020, San Francisco businesses

20  such as Chloe's Café were forced by governmental orders to reduce their operations so as to

21  prevent people from being exposed to the COVID-19 virus - not because of any actual physical

22  property damage to property at Chloe's Café or any surrounding properties.

23          Businesses in San Francisco were ordered to reduce their operations as the result of three

24  sets of relevant orders:[1]  Attached hereto as Exhibits 1, 2, 3 and 4 are true and correct copies of

25

26  _____

27  [1]  Although Chloe's Café is located in the City and County of San Francisco and nowhere else,
    the Complaint refers to orders from Los Angeles County and even from other states, such as

28  New York, Colorado, Washington, Indiana, New Mexico, North Carolina, Missouri and Illinois.
    Clearly those foreign orders are not relevant or controlling here, as plaintiffs were never subject
    to them, nor do plaintiffs so allege.

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

1    these orders (the "Closure Orders"), which provided as follows:

2        **Governor's Orders**:  On March 12, 2020, Governor Newsom issued an executive order

3    requiring California residents "to heed any order and guidance of state and local public health

4    officials, including but not limited to the imposition of social distancing measures, to control the

5    spread of COVID-19."  (Exh. 1, p. 1.)  Then on March 19, 2020, the Governor ordered all

6    California residents to heed the order of the State Public Health Officer requiring residents to

7    stay at home (with certain exceptions).  (Exh. 2, p.1.). The March 19th order repeatedly

8    explained the reason it was issued was "to protect public health."  (Exh. 2, p. 1.)  The Governor's

9    orders did not state, or even suggest, they were issued in any way due to actual or threatened

10   property damage caused by the virus.

11       **San Francisco March 16 Order**:  On March 16, 2020, the San Francisco Department of

12   Public Health issued an order requiring all individuals in San Francisco to stay at home "except

13   for certain essential activities," effective the following day, March 17.  (Exhibit 3, p. 1.). The

14   March 16th San Francisco order directed restaurants such as Chloe's Café to close, except that

15   they could still provide takeout and delivery service.  (Exh. 3, p. 2.)  The order defined

16   restaurants as "Essential Businesses" (Exh. 3, p. 8, § 10.f.xiii) and stated, "All Essential

17   Businesses are ***strongly encouraged to remain open***" (Exh. 3, p. 3, § 3.)  And, "All businesses

18   ***… except Essential Businesses*** … are required to cease all activities…".  (Exh. 3, p. 3, § 3.)

19       Importantly, San Francisco's March 16th order contained two sections explaining the

20   reasons for its issuance.  Section 6 stated: "This Order is issued based on evidence of increasing

21   occurrence of COVID-19 within the County . . . and evidence that the age, condition and health

22   of a significant portion of the population of the County places it at risk for serious health

23   complications, including death, from COVID-19."  (Exh. 3, pp. 3-4, § 6.).  Section 7 of the order

24   similarly stated: "This Order also is issued in light of the existence of 37 cases of COVID-19 in

25   the County as well as at least 258 confirmed cases and at least three deaths in neighboring Bay

26   Area counties, … including a significant and increasing number of suspected cases of

27   community transmission and likely further significant increases in transmission."  Notably,

28

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

1   Section 7 of the order stated: "***This Order is necessary to slow the rate of spread [of the virus]***

2   ...". (Exh. 3, p. 4, § 7.)

3          As with the Governor's orders, San Francisco's March 16th order did not state, or even

4   suggest, that it was issued due to actual or threatened property damage caused by the virus.

5          **<u>San Francisco March 31 Order</u>**:  On March 31, 2020, the San Francisco Department of

6   Public Health issued a superseding order, which continued to define restaurants as Essential

7   Businesses and required they remain closed except for takeout and delivery service.  (Exh. 4, )

8   p. 12, § 13.f.xvii.).  Like the March 16th order, San Francisco's March 31st order "strongly

9   encouraged" Essential Businesses to remain open. (Exh. 4, p. 4, § 5.)  Travel was prohibited,

10  except Essential Travel, which included going to restaurants.  (Exh. 4, p. 5, § 7 & p. 15, § 13.i.)

11         As with the Governor's executive orders and the San Francisco March 16th order, this

12  superseding order was not issued due to actual or threatened property damage.  Indeed, the

13  March 31st order explained it was issued for the exact same personal health reasons that were

14  behind the issuance of the March 16th order.  (Exh. 4, pp. 5-6, §§ 8 and 9.)  Those reasons did

15  not include any property damage at either the Restaurants or other premises.[2]  On the contrary,

16  like the March 16th order, the March 31st order stated: "***This Order is necessary to slow the rate***

17  ***of spread [of the virus]*** . . .".  (emphasis added.)  (*Id.*)

18         Notably, these Closure Orders forced restaurants such as Chloe's Café to close their

19  dining rooms and prohibited customers from accessing and using the Restaurants' dining rooms

20  – but they did not prohibit access to the restaurants as a whole. [3]

21  _____

22  [2]  The Complaint refers to an order issued by San Francisco Mayor London Breed on April 30,

23  2020.  As discussed more below, this order is not relevant to this motion because it was not the
    reason San Francisco Chloe's Café and other businesses had to suspend dine-in services in the

24  first instance.  Instead, the March 16, 2020, order caused that suspension - effective March 17,
    2020 – well over six weeks prior to the April 30 order referenced in the Complaint.

25

26  [3]  The Closure Orders permitted employees to work in close proximity if necessary.  San
    Francisco's March 16th order required that "[t]o the greatest extent feasible," Essential

27  Businesses were to maintain a six-foot distance between people and follow other isolating steps.
    (Exh. 3, p. 3, § 3 & p. 9, § 10.j.)  Under the March 31st order, individuals were required to

28  strictly comply with social distancing requirements "except...as necessary to carry out the work
    of Essential Businesses..."  (Exh. 4, p. 16, § 13.k.)

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

1    **__Plaintiffs' Insurance Claim.__**  Plaintiffs submitted to OMI an insurance claim for their

2    business income loss resulting from the disruption of their business due to the Closure Orders.

3    (Doc. 1, p. 9, ¶ 49.).  Plaintiffs have not alleged that their claim was supported by any facts,

4    either generally or specifically, showing that Chloe's Café sustained actual direct physical

5    damage to its premises or property therein.  Instead, they argue that their loss resulted from the

6    denial of ***access*** to the property: "[t]he Closure Orders of civil authority prohibited ***access*** to

7    Plaintiff and other class members' Insured Properties, and the areas immediately surrounding the

8    Insured Properties . . ."  (emphasis added).  (Doc. 1, p. 9, ¶ 45.).  They describe this lack of

9    access as "preventing customers and patients (sic) from physically occupying the property,

10   causing the property to be physically uninhabitable by customers and patients (sic), causing its

11   function to be nearly eliminated or destroyed, and/or causing a suspension of business operations

12   on the premises."  (Doc. 1, pp. 8-9, ¶ 44.)

13       OMI denied plaintiffs' insurance claim and this action ensued.  (Doc. 1, p. 9, ¶ 50.)

14   **IV.    RELEVANT POLICY PROVISIONS**

15       OMI's Policy (entitled "Businessowners Protector Policy" and numbered BSP720613)

16   was issued to "Chloe's Café" and "Steven Baker & Melanie King" as the named insureds.  (Doc.

17   1, pp. 4, 24; Exh. A., Continuation Certificate).  The Policy reflects a premises description as

18   "1399 Church St., San Francisco, CA" which plaintiffs explain is "the insured premises" under

19   the Policy.  (Doc. 1, p. 4, ¶ 11; Exh. A, Continuation Certificate.)

20       Plaintiffs allege their claims are covered by the Policy's coverages for lost business

21   income, including business income loss caused by action of civil authority and incurred extra

22   expenses.  (Doc. 1, p. 9, ¶ 46.)  These coverages are called Business Income; Extra Expense; and

23   Civil Authority in the Policy.  (Exh. 5, form BP00030702/Businessowners Coverage Form ("BI

24

25

26     Moreover, the Orders permitted customers to travel to and enter Essential Businesses.  (Exh. ,
27   p. 4, § 3 ["All Essential Businesses are strongly encouraged to remain open.  To the greatest
     extent feasible," customers need to observe social distancing guidelines]; Exh. , p. 5, § 5; p. 15,
28   § 13.h [presuming that members of the public will visit Essential Businesses].)

Form"), pp. 5-7 of 39.)  All of these coverages are found as Additional Coverages in Section I-Property of the Businessowners Coverage Form.

The Policy provides:

**f.      Business Income**

**(1)      Business Income**

**(a)**      We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations"[4] during the "period of restoration".[5]  The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss….

….

**(3)**      With respect to the coverage provided in this Additional Coverage, suspension means:

**(a)**      The partial slowdown or complete cessation of your business activities; and

**(b)**      That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

….

**g.      Extra Expense**

**(1)**      We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss….

---

[4] The Policy defines "operations" as "your business activities occurring at the described premises."  (Exh. 5, BI Form, p. 22 of 39.)

[5] The "period of restoration" begins "(a) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or (b) Immediately after the time of direct physical loss or damage for Extra Expense Coverage; caused by or resulting from any Covered Cause of Loss at the described premises."  (Exh. 5, BI Form, pp. 22-23 of 39.)

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA  94608
(510) 841-7777 – Facsimile (510) 841-7776

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

….

**(3)**     With respect to the coverage provided in this Additional Coverage, suspension means:

   (a)     The partial slowdown or complete cessation of your business activities; and

   (b)     That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

….

**i.      Civil Authority**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

….

(Exh. 5, BI Form, pp. 5-7 of 39.)

All of these coverages require "direct physical loss of or damage to property", caused by or resulting from a "Covered Cause of Loss." [6]   The Policy's Section I-Property defines Covered Cause of Loss as "[r]isks of direct physical loss unless the loss" is excluded or limited by the Policy's provisions. (Exh. 5, BI Form, p. 2 of 39.)

---

[6]  The Complaint makes reference to the Policy's coverage for "Business Income From Dependent Properties" (found as section **5.m.** under the Policy's "Additional Coverages"), but plaintiffs fail to identify what particular dependent property possibly was involved in their claim. In any event, the insuring language for this additional coverage for dependent properties mirrors that contained in the Policy's coverage under section **5.f.** for "Business Income," that is, there is coverage relative to dependent properties only for "the actual loss of Business Income you sustain due to physical loss or damage at the premises of a dependent property caused by or resulting from a Covered Cause of Loss." (Exh. 5, BI Form, pp. 8-9.).  Therefore, the coverage analysis for "Business Income From Dependent Properties" is the same as that governing coverage for "Business Income."  Plaintiffs' losses are not covered under either coverage.

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

## V.     THE CLAIM IS NOT COVERED AS A MATTER OF LAW

### A.     Plaintiffs' Allegations Show There Is No Coverage

The plaintiffs cannot meet the burden of proof to prevail on their insurance claim.  In this action, the interpretation and application of policy language is governed by California law.  *St. Paul Mercury Ins. Co. v. Ralee Eng'g Co.*, 804 F.2d 520, 522 (9th Cir. 1986).  California law requires plaintiffs to establish that their claims are covered in the first instance.  *Minkler v. Safeco Ins. Co. of Am.,* 49 Cal.4th 315, 322 (2010).  Policy interpretation looks first at the contract's language to determine its plain meaning.  *E.g., Waller v. Truck Ins. Exchange, Inc.* 11 Cal.4th 1, 18 (1995).  The policy "must be interpreted as a whole, and in the circumstances of the case…"  *Id.*  When reading a policy, California law "will not strain to create an ambiguity where none exists."  *Id.* at pp. 18-19.

To overcome this motion, plaintiffs must show the losses are within basic coverage provided by the Policy's Business Income or Civil Authority Additional Coverages.  The insuring agreement for each of these coverages requires that the suspension of operations giving rise to the loss of income ***must be caused by "direct physical loss of or damage to property."***  Moreover, the physical loss or damage itself must be caused by a "Covered Cause of Loss."  A "Covered Cause of Loss" is a risk of direct physical loss that is not excluded or limited by Policy provisions.  (Exh. 5, BI Form, p. 2 of 39.)

Because they cannot show that a "Covered Cause of Loss" caused direct physical loss or damage which in turn caused a suspension of their business operations, plaintiffs have not demonstrated their alleged economic harm falls within that basic grant of coverage.  Their claim fails therefore as a matter of law.

### B.     Claim Does Not Fall Within The "Business Income" Insuring Agreement

#### 1.     *No Direct Physical Loss Of Or Damage To Property At Chloe's Cafe*

To trigger Business Income coverage, the Policy's insuring agreement requires that the loss of business income must be caused by "direct physical loss of or damage to property" at the plaintiffs' own insured premises.  The Policy cannot provide coverage for plaintiffs' economic losses here because they resulted from the issuance of Closure Orders, not because of direct

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

1   physical damage at Chloe's Café itself.  Therefore, the claimed losses are not covered under the

2   clear language of the Policy.

3         California courts have ruled that he requirement of physical loss, given the ordinary

4   definition of that term, is " 'widely held to exclude alleged losses that are intangible or

5   incorporeal, and, thereby to preclude any claim against the property insurer when the insured

6   merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable,

7   physical alteration of the property.' "  *MRI Healthcare Center of Glendale, Inc. v. State Farm*

8   *General Ins. Co.,* 187 Cal.App.4th 766, 778-779 (2010) [defining phrase "direct physical loss" in

9   business property insurance policy].

10        In *MRI*, an MRI machine had been turned off and would not turn on again.  (187

11  Cal.App.4th at 770.)  The insured and its insurer disputed whether the machine had suffered

12  "direct physical loss".  (*Id*. at 769–770, 777–778.)  The appellate court held: "A direct physical

13  loss contemplates an actual change in insured property then in a satisfactory state, occasioned by

14  accident or other fortuitous event directly upon the property causing it to become unsatisfactory

15  for future use or requiring that repairs be made to make it so. . . . For loss to be covered, there

16  must be a distinct, demonstrable, physical alteration of the property."  (*Id*. at 779, citations and

17  internal quotation marks omitted.)

18        The *MRI* Court further explained: "For there to be a 'loss' within the meaning of the

19  policy, some *external force* must have acted upon the insured property to cause a *physical*

20  *change* in the condition of the property, i.e., it must have been 'damaged' within the common

21  understanding of that term." 187 Cal.App.4th at 780, emph. in original.  In that case, the MRI

22  machine did not suffer any "actual physical 'damage' " by virtue of the fact that it was turned off

23  and could not be turned back on.  *Id*.

24        Supporting the *MRI* decision is *Newman Myers Kreines Gross Harris, P.C. v. Great*

25  *Northern Ins. Co.*, 17 F.Supp.3d 323, 324-325 (S.D.N.Y. 2014), where the insured lost income

26  when it could not access its office because the utility company shut off power in anticipation of

27  Hurricane Sandy.  Finding that the business interruption claim was not covered, the court

28  explained, "The words 'direct' and 'physical,' which modify the phrase 'loss or damage,'

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA  94608
(510) 841-7777 - Facsimile (510) 841-7776

1    ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than

2    forced closure of the premises for reasons exogenous to the premises themselves, or the adverse

3    business consequences that flow from such closure." *Id.* at 331.

4         Here, the Complaint's allegations show that the facts giving rise to plaintiffs' claims do

5    not allege actual physical damage.  Nowhere has Chloe's Café alleged in the Complaint, or even

6    suggested, that it suspended operations because of any actual physical loss or damage at its San

7    Francisco location or elsewhere.  The plaintiffs do not claim their premises were contaminated,

8    directly or indirectly, by any virus or infected person.  They do not claim that Chloe's Café's

9    dining room or other facilities were closed because of actual physical contamination.  Nor do

10   they claim that the business suspended operations due to any "direct physical loss of or damage

11   to property" at their dining or kitchen areas or in any other part of premises where the Chloe's

12   Café operated before operations were suspended.  Instead, the Complaint repeatedly explains,

13   clearly and unequivocally, that the reason for the interruption of business was the Closure

14   Orders, not actual physical damage at the cafe.

15        Plaintiffs' position here is akin to the insured in *Philadelphia Parking Authority v.*

16   *Federal Ins. Co.*, 385 F.Supp.2d 280 (S.D.N.Y. 2005).  There, the insured lost business because

17   the government shut down all flights after the September 11, 2001 terrorist attacks.  On a

18   12(b)(6) motion to dismiss, the court found there was no coverage for lost income, because the

19   business interruption was not caused by physical damage.  *Id.* at 287-289.

20        The scope of the Closure Orders here also evidences the lack of connection to physical

21   damage.  Notably, there are no allegations in the Complaint of the actual, physical presence of

22   the COVID-19 virus at plaintiffs' premises or that said virus damaged any property at those

23   premises.  Instead, the Closure Orders applied to all businesses in San Francisco, regardless of

24   the presence or absence of the virus at any particular establishment, in order to protect people

25   from the virus.  There were no exceptions if a business could establish the virus was not present

26   on its premises.  Nor did the Orders require that an Essential Business, such as Chloe's Cafe,

27   should close down if the virus were detected there.  The actual presence of the virus at any

28

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

1    particular location made no difference to the implementation or effect of the Closure Orders, and

2    did not affect plaintiffs' loss of income.

3            Under the allegations of the Complaint, there can be no question that Chloe's Café did

4    not sustain any business income losses that fall within the Policy's insuring agreements.

5                       **2.    *No Physical Change In Condition Of Property***

6            In an attempt to manufacture coverage where none exists, the Complaint mis-

7    characterizes the Closure Orders in a conclusory fashion.  For example, it argues that the

8    Closures Orders were issued "in response to dangerous physical conditions resulting from a

9    covered cause of loss.  (Doc. 1, p. 9, ¶ 45.)  This sweeping generalization is not supported by the

10   Complaint's factual allegations.  Nowhere does the pleading raise any facts to show, or even to

11   suggest, that there actually was any such damage to physical components at Chloe's Cafe.

12           While plaintiffs' ability to use and generate income from their property was allegedly

13   adversely affected by the Closure Orders, such loss of use and resulting economic harm is not

14   "direct physical loss of or damage to" that property.  The Complaint simply does not allege facts

15   indicating that an external force somehow operated to cause a covered physical change in the

16   condition of Chloe's Café's property under the Policy's language and as articulated in *MRI*.

17           The Eighth Circuit dealt with a claim for loss of business income caused by a

18   governmental order in *Source Food Technology, Inc. v. U.S. Fidelity and Guar. Co.*, 465 F.3d

19   834 (8th Cir. 2006).  The insured sold beef products; its sole source of beef was Canada.  When a

20   Canadian cow tested positive for mad cow disease, the government prohibited the importation of

21   beef from Canada.  *Id.* at 835.  The insured argued that it had suffered physical damage, because

22   its beef product in Canada "was treated as though it were physically contaminated by mad cow

23   disease and lost its function."  *Id.* at 836.  The court observed that characterizing the insured's

24   inability to transport and sell the beef "as direct physical loss to property would render the word

25   'physical' meaningless."  *Id.* at 838.

26           Plaintiffs may argue here that the threat of potential harm from the coronavirus is

27   sufficient to trigger coverage.  As background, the Complaint sets out general information about

28   the virus and the risks of COVID-19 infections from it.  (Doc. 1, pp. 6-7, ¶¶ 26-33.)  However,

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

1   none of those allegations suggests that Chloe's Café was actually contaminated or otherwise

2   physically damaged by the coronavirus or by anyone infected with COVID-19.

3          Similarly, the Complaint does not assert that the Closure Orders were issued as a result of

4   any such actual contamination at Chloe's Café or at any other premises.  The potential that the

5   virus could possibly contaminate physical property so as to actually damage it does not create

6   coverage here.

7          Even if the Court were somehow to infer that the virus might have been present on

8   objects at plaintiffs' premises, such presence would not constitute "direct physical loss of or

9   damage to" their property in any event.  That is because the presence of the virus on objects does

10  not mean those objects are themselves actually damaged.  Inanimate surfaces on which

11  coronaviruses land can easily be cleaned using simple disinfectants.

12         Caselaw shows that lost income due to cleaning of undamaged property is not covered

13  under the Policy.  For example, in the recent ruling in *Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 18-

14  1287, --- Fed.Appx. ---, ---, 2020 WL 4782369 (11th Cir., Aug. 18, 2020), the Eleventh Circuit

15  addressed a business income loss claim by a restaurant.  Its income had been adversely affected

16  by construction activities outside its own premises which required the business to clean up

17  construction dust and debris.  The court concluded that the district court correctly granted

18  summary judgment in favor of the defendant insurer, agreeing that the insured's "initial claim for

19  cleaning was not covered because property that must be cleaned, but is not damaged, has not

20  sustained a 'direct physical loss.'"  *Id.* at *12.  The appellate court declared that "an item or

21  structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and

22  'physical.'"  *Id.* *23.  Notably, this decision relied on the California case *MRI* for its proposition

23  that a "direct physical loss contemplates an actual change in insured property" (citing *MRI,* 187

24  Cal.App.4th at 779).  *Id.*

25         Similarly, *Universal Image Productions, Inc. v. Federal Ins. Co*., 474 Fed.Appx.569 (6th

26  Cir. 2012) involved a claim for income that was lost when the insured business shut down in

27  order to clean mold and bacterial contamination inside the building's ventilation system.  The

28  court denied recovery for business income losses because there was no tangible damage to

1    physical property involved in cleaning the mold and bacteria, and therefore no "direct physical

2    loss" within the meaning of the policy.  *Id.* at 574.

3              **3.        *"Period of Restoration" Definition Anticipates Physical Damage***

4              Importantly, the Policy is written so as to cover loss of income and extra expense only as

5    incurred during the "period of restoration," as that term is defined in the Policy.  The "period of

6    restoration" is defined to mean the period beginning "after the time of direct physical loss or

7    damage."  It ends when the property is "repaired, rebuilt or replaced."  (Exh. 5, BI Form, pp. 22-

8    23 of 39..)

9              The requirement that loss of income and extra expanse coverage is afforded only during

10   this defined period of time while the property is being repaired, rebuilt or replaced gives further

11   meaning to the Policy's insuring clause for those coverages.  The terms "'rebuild,' 'repair' and

12   'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature."

13   *Philadelphia Parking Authority,* 385 F.Supp.2d 280 at 287.

14             Here, there is nothing to repair, rebuild or replace, nor do plaintiffs so allege.  Plaintiffs

15   do not point to any portion of Chloe's Café's physical premises that needs to be physically

16   restored in any fashion.  On the contrary, their claimed losses are caused by the Closure Orders

17   and thus will last as long as those restrictions remain in place.  Returning plaintiffs' business

18   incomes to their pre-COVID levels depends upon when the Closure Orders are lifted, not as to

19   any time needed to make actual repairs at their premises.  Furthermore, even if the mere presence

20   of viruses on surfaces would be considered to trigger the beginning of the "period of restoration"

21   as defined, that period would end immediately once the surfaces are wiped down with a

22   disinfectant.  Because the Policy's coverages for business income/extra expense turn on the

23   "period of restoration" underscores that actual direct physical damage at plaintiffs' premises -

24   which requires some type of repairing, rebuilding or replacement - is needed to trigger that

25   coverage in the first instance.

26             **4.        *No Causal Link Between Direct Property Damage And Loss Of Income***

27             The Business Income insuring clause states that the loss "***must be caused by*** direct

28   physical loss or damage to property . . ." (emphasis added).  This plainly means that there ***must***

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

1  *be a causal link* between the claimed loss and some actual insured property damage.  *Northrup*

2  *Grumman Corp. v. Factory Mut. Ins. Co.*, 2013 WL 3946103, *7 (C.D. Cal. July 31, 2013).

3      Here, even if plaintiffs' claim were somehow deemed to involve "direct physical loss of

4  or damage" to property as that term is used in the Policy (which OMI denies), such loss or

5  damage did not cause the economic harm they are claiming.  On the contrary, their loss of

6  business income was squarely the result of Closure Orders.  Plaintiffs lost earnings by shutting

7  down or limiting their operations in compliance with the Closure Orders – as the Complaint

8  repeatedly alleges.  Because the loss of income was not caused by any distinct, demonstrable

9  physical alteration of property, it is not covered by the Policy.

10      **C.    The Claim Does Not Fall Within The "Civil Authority" Insuring Agreement**

11      The Policy's Civil Authority Coverage applies to loss of income that meets all of the

12  following criteria: caused by action of civil authority that prohibits access to the insured

13  premises; which action must be "due to direct physical loss of or damage to property, other than

14  at the described premises"; and which direct physical damage results from a Covered Cause of

15  Loss.  (Exh. 5, BI Form, p. 7 of 39.)  Plaintiffs' claims do not meet these criteria because the

16  Closure Orders were not due to direct physical loss of or damage to property, nor have they

17  prohibited access to Chloe's Café's premises or property therein.

18      *1.    The Closure Orders Were Not Issued Due To Direct Physical Loss*

19      The Closure Orders were intended to isolate individuals in order to prevent the spread of

20  COVID-19.  (Exh. 1, p. 1; Exh. 2, p. 2; Exh. 3, pp. 3-4, § 6 and p. 4, § 7; Exh. 4, pp. 5-6, § § 8

21  and 9.)  They were not issued due to any direct physical loss to property.  As noted above, the

22  Governor's orders of March 12 and 19, as well as San Francisco's orders of March 16 and 31,

23  specifically explained why they were issued.  Each order very clearly stated that it was issued to

24  protect the public's health from the spread of COVID-19.  (*Id.*)  Nowhere in any of those orders

25  did any government official state that they were issued due to some actual physical loss of or

26  damage to property, either at Chloe's Cafe or at other premises.  Therefore, Civil Authority

27  coverage does not apply.

28  / / /

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA  94608
(510) 841-7777 · Facsimile (510) 841-7776

1      Supporting this is *United Air Lines, Inc. v. Insurance Co. of the State of Pennsylvania*,

2   439 F.3d 128 (2d Cir. 2006), which considered an airline's claim for income loss caused by a

3   governmental order shutting down air traffic after the 9/11 attacks.  The court found the order

4   was not the direct result of property damage, but was "based on fears of future attacks."  *Id.* at

5   134.  Notably, the airport's reopening "had nothing to do with repairing, mitigating, or

6   responding to the damage caused by the attack..." *Id.* at 135.  Because the civil order was not

7   directly caused by physical damage, there was no business interruption coverage.  *Id.*

8      Similarly, in *Dickie Brennan & Co. v. Lexington Ins. Co.,* 636 F.3d 683 (5th Cir. 2011),

9   restaurateurs sought coverage for income lost in the wake of a mandatory evacuation order,

10  which was issued as a hurricane approached Louisiana.  *Id.* at 684-685.  The insureds argued that

11  the policy's requirement of physical damage was satisfied because the hurricane had already

12  damaged property in the Caribbean when the order was issued.  *Id.* at 685.  The court held that

13  because there was no evidence of any nexus between the order and physical damage in the

14  Caribbean or elsewhere, coverage was not available.  *Id.*

15     In *Source Food*, the 8th Circuit found there was no Civil Authority coverage for the same

16  reason there was no Business Interruption coverage: there was no direct physical loss to

17  property.  Treating a product as though it were physically contaminated, so that it effectively lost

18  its usefulness, did not constitute physical loss.  *Source Food,* 465 F.3d at 837-838.

19          ***2.    Mayor Breed's April 30 Order Is A Red Herring***

20     The Complaint singles out one of the 16 prefatory recitals to an April 30, 2020, order

21  from San Francisco Mayor London Breed.[7]  (Doc. 1, p. 8, ¶ 41; Exh. 6.).  Plaintiffs will argue

22  that the Mayor's comment establishes "Civil Authority" coverage.  It does not.

23     First, the April 30th order itself is a red herring because it had nothing to do with the

24  cause of plaintiffs' having to discontinue dine-in services – indeed, it was issued ***over six weeks***

25

26  ────────────

27  [7] It reads:

28      **WHEREAS**, This order and the previous orders issued during this emergency have all
        been issued because of the propensity of the virus to spread person to person and also
        because the virus physically is causing property loss or damage due to its proclivity to
        attach to surfaces for prolonged periods of time . . . (Exh. 6, p. 2.)

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

1  *after* San Francisco restaurants had already ceased their dine-in services on March 17, 2020, as

2  was required by the initial March 16th San Francisco order.  The April 30th order was not the

3  reason plaintiffs had to curtail their business operations – it was not an operative order that

4  affected their operations.  On the contrary, the prior March 16th San Francisco order, as well as

5  the March 12th and March 19th Governor's orders, had already required the cessation of dine-in

6  services over six weeks earlier.  Those are the only orders relevant to this motion.

7    Second, the March 16th San Francisco order and the March 12th and March 19th

8  Governor's orders each expressly explained that they were issued to protect the public health

9  and to prevent community transmission of the COVID-19 disease, not because of any actual

10  direct property damage at Chloe's Café or elsewhere.  (Exh. 1, p. 1; Exh. 2, p. 2; Exh. 3, pp. 3-4,

11  § 6 and p. 4, § 7.)  Those three Closure Orders speak for themselves and clearly articulate the

12  reasons for their issuance.  Those reasons did not include actual direct physical damage to

13  property at any premises.

14    Third, it is irrelevant that the single recital to Mayor Breed's later order on April 30

15  attempted to characterize, in her own words, some of the reasons for the prior issuance of some

16  governmental orders weeks earlier.  Even if the Court for some reason were inclined to consider

17  that recital, it further defeats plaintiffs' claim.  That is because it correctly acknowledged that

18  "previous orders issued during this emergency have all been issued because of the propensity of

19  the virus to spread person to person . . .".  (Exh. 6, p. 2.).  This comment mirrors those in the

20  prior operative orders, that is, that they all were issued to protect the public health, not because

21  of any actual direct "physical loss of or damage to property."  Moreover, the latter part of the

22  recital merely notes that the virus has a "proclivity to attach to surfaces for prolonged periods of

23  time."  *Id.*  Specific to this matter, that part of the recital did not state that there was any

24  physical loss at plaintiffs' property or at any other property near plaintiffs' location.  Proclivity

25  does not constitute presence at plaintiffs' property.  Nor is it actual physical loss or damage.

26  / / /

27  / / /

28  / / /

### 3.    The Closure Orders Did Not Prohibit Access To Chloe's Cafe

Importantly, the Closure Orders did not prohibit access to plaintiffs' premises or any other restaurant in San Francisco such as Chloe's Café – they only barred dine-in services at those restaurants.  For that reason alone, Civil Authority coverage is not available.

California courts examined that point in *Syufy Enterprises v. Home Ins. Co. of Indiana,* 1995 WL 129229 (N.D. Cal. March 21, 1995).  Following the verdict in the Rodney King trial, civil authorities imposed dusk-to-dawn curfews to quell potential violence and looting.  *Id.* at *1. Syufy closed its movie theaters during the curfew, and made a claim for the resulting loss of business income.  *Id.*  The policy in *Syufy* required that access to the insured premises be "specifically prohibited" by civil authority.  *Id.*  Here, the Policy also requires "action of civil authority that prohibits access to the described premises."  (Exh. 5, BI Form, p. 7 of 39.)  In *Syufy*, there was no coverage because the curfew orders did not deny access to the insured theaters.  1995 WL 129229 at *2.  Here, the Closure Orders did not prohibit access to Chloe's Café, nor do plaintiffs so allege in their Complaint.

In another post-9/11 case, an airport parking operation made a claim for lost business income caused by the order grounding all flights.  *Philadelphia Parking Authority,* 385 F.Supp.2d 280.  The court found there was no Civil Authority coverage because the order did not prohibit access to the insured's garages.  "While this unprecedented order may have temporarily obviated the need for Plaintiff's parking services, it did not prohibit access to Plaintiff's garages and therefore cannot be used to invoke coverage under Plaintiff's policy."  *Id.* at 289.

### D.    Plaintiffs' Claim Is Also Excluded

Even if plaintiffs had stated a claim for loss caused by actual physical damage to property, coverage would be excluded by applicable exclusions in the Policy.  "Covered Cause of Loss" is defined as "Risks of direct physical loss unless the loss is: [¶] **a.** Excluded in Paragraph B. Exclusions in Section I…."  (Exh. 5, BI Form, p. 2 of 39.)

The Policy excludes loss caused by "The enforcement of any ordinance or law: [¶] (a) Regulating the construction, *use*, or repair *of any property*;…"  (Excl. 1.a., Exh. 5, BI Form, p. 11 of 39, emph. added.)  The Policy also exclude losses "caused by or resulting from" "Acts or

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA  94608
(510) 841-7777 - Facsimile (510) 841-7776

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

1    decisions, including the failure to act or decide, of any person, group, organization or

2    governmental body." (Excl. 3.b., Exh. 5, BI Form, p. 14 of 39.)

3         As shown above, plaintiffs lost income because Chloe's Café complied with

4    governmental orders that regulated the use of its restaurant. Therefore, even if the loss was

5    caused by physical damage to property, it would nonetheless be excluded, not covered.

6         **E.    The Court Should Dismiss Or Grant Summary Judgment**

7         Because there is no coverage for plaintiffs' claim, each of the Complaint's causes of

8    action fails as a matter of law. Accordingly, the Court should dismiss the Complaint pursuant to

9    Rule 12(b)(6). Alternatively, should the Court treat this as a Rule 56 motion, summary judgment

10   should be granted in favor of OMI on all causes of action. The Court should issue a declaratory

11   judgment that the Policy does not provide coverage for plaintiffs' loss of income claim as to each

12   of the Complaint's four causes of action for declaratory relief: "Business Income Coverage"

13   (First Cause of Action), "Civil Authority Coverage" (Second Cause of Action), "Extra Expense

14   Coverage" (Third Cause of Action) or "Dependent Property Business Interruption Coverage

15   "(Fourth Cause of Action).

16   **VI.   MOST TRIAL COURTS ARE REJECTING COVID-RELATED CLAIMS**

17        A number of California trial courts have been called upon to address the same issue

18   raised here by OMI's motion. Those courts have ruled that business income/extra expense

19   coverage under a property insurance policy is not triggered under COVID-related circumstances

20   similar to those faced by restaurants such as Chloe's Cafe.

21        Those decisions include the following recent California federal district court cases:

22        **Northern District of California:**

23        • *Mudpie, Inc. v. Travelers Casualty Insurance Company of America*, No. 4:20-CV-

24        03213-JST, 2020 WL 5525171 (N.D. Cal., Sept. 14, 2020).

25             District Judge Jon S. Tigar last month granted the insurer's motion to dismiss

26             plaintiff's complaint claiming lost business income as a result of the issuance of

27             California's Stay at Home Orders in response to the outbreak of COVID-19

28             illness. Mudpie, Inc., a San Francisco retail store, alleged that it was entitled to

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

coverage for its lost income resulting from its compliance with the government closure orders because its storefront became useless and/or uninhabitable due to the orders.  Judge Tigar found that Mudpie had failed to establish a "direct physical loss of property" under its policy containing pertinent insuring language identical to that contained in OMI's Policies.  *Id.* at *4.  Importantly, the Court squarely rejected Mudpie's argument that loss of its store's "functionality" due to the orders triggered coverage.  *Id.* at *6.  Relying on *Syufy*, *supra*, Judge Tiger also noted that "[u]nder the Civil Authority provision [of Travelers' business income loss policy coverage], Mudpie must establish the 'requisite causal link between damage to adjacent property and denial of access' to its store."  *Id.* at *7.  The ruling found that Mudpie's complaint did not establish that link because the governmental closure orders were "preventative" and not based on any actual damage to property adjacent to the Mudpie's premises as required by the terms of the Travelers' policy's insuring clause for Civil Authority coverage.  *Id.*

**Central District of California:**

• *10E, LLC v. Travelers Indem. Co. of Connecticut*, No. 2:20-CV-04418-SVW-AS, 2020 WL 5359653 (C.D. Cal., Sept. 2, 2020).

District Judge Stephen V. Wilson granted the insurer's motion to dismiss a Los Angeles restaurant's complaint claiming entitlement to coverage for COVID-related business income losses.  As in the instant matter, plaintiff 10E, LLC operated a restaurant that was prohibited by governmental restrictions from providing in-person dining at its premises.  Plaintiff argued that Mayor Garcetti's orders limited it to offering takeout and delivery services only, such that these restrictions caused a complete and total shutdown of its business.  Under operative policy language identical to that in the OMI Policy, 10E, LLC argued that "direct physical loss of or damage to property" encompasses temporary impaired use sufficient to trigger business income loss coverage.  Judge Wilson

rejected that argument, noting also that the restaurant was never "permanently dispossessed" of any insured property:

> "[W]hile public health restrictions kept the restaurant's 'large groups' and 'happy-hour goers' at home instead of its dining room or at the bar, Plaintiff remained in possession of its dining room, flatware, and all of its accoutrements of its 'elegantly sophisticated surrounding." *Id.* at 5.

The court similarly rejected claims that the Travelers' policy provided Civil Authority coverage under pertinent language identical to that in the OMI Policy. That was because 10E, LLC did not allege actual cases of "direct physical loss of or damage to property" at other locations apart from its own premises. *Id.* at 6.

• *Mark's Engine Company No. 28 Restaurant, LLC v. The Travelers Indemn. Co. Of Connecticut, et al.*, No. 2:20-CV-04423-AB-SK, 2020 WL 5938689 (C.D. Cal., Oct. 2, 2020).

> District Judge Andre Birrotte, Jr. granted the insurer's motion to dismiss a Los Angeles restaurant's business income loss claim involving pertinent facts and operative policy language identical to that at bar. The Court noted that the defendant insurer's policy providing coverage Civil Authority, Business Income and Extra Expense would be triggered only by the presence of "direct physical loss of or damage to property." *Id.* at 3. Finding that the plaintiff restaurant's economic losses due to compliance with governmental orders around COVID-19 risks do not qualify as "direct physical loss of or damage to property," Judge Birrotte quoted extensively from the Court's ruling granting the insurer's motion to dismiss in *10E, LLC, supra*, specifically adopting the reasoning of Judge Wilson in that case.

Judge Birrotte went on to comment further about the Los Angeles restaurant's claim, as follows:

> "Lastly, the Court alternatively concludes that Plaintiff suffered no complete 'direct physical loss of' its property as it always had complete

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA  94608
(510) 841-7777 - Facsimile (510) 841-7776

access to the premises even after the [governmental] order [was issued].
The only individuals who could potentially claim 'direct physical loss of'
access to the premises would be patrons who were no longer allowed to
dine in.  And even then, the Policy is between [insured] Plaintiff and
[insurer] Defendant, not restaurant goers and [insurer] Defendant." *Id.* at
\*5.

**Southern District of California:**

• *Pappy's Barber Shops, Inc. et al. v. Farmers Group, Inc*., No. 3:20-CV-907-CAB, 2020
WL 5500221 (S.D. Cal., Sept. 11, 2020).

District Judge Cathy Ann Bencivengo granted the insurer's motion to dismiss
plaintiffs' complaint claiming business income losses due to governmental
shutdown orders.  Plaintiffs had asserted they were entitled to coverage for
income losses they incurred as the result of COVID-related orders issued by San
Diego Mayor Kevin Falconer and California Governor Newsom.  The Court
rejected the insureds' argument that the Farmers' relevant policy language
(identical to that of OMI's Policy) requiring "direct physical loss of" does not
require a tangible damage or alteration of property.  *Id.* at *4.  The ruling
referenced *MRI'*s discussion of such policy terms:

> "Under California law, losses from inability to use property do not amount
> to 'direct physical loss of or damage to property' within the ordinary and
> popular meaning of that phrase.  Physical loss or damage occurs only
> when property undergoes a 'distinct, demonstrable, physical alteration.'
> *MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.,*
> 187 Cal.App.4th 766, 779 (2010) (citation and quotation marks omitted).
> "Detrimental economic impact' does not suffice.  *Id.*

In addition, the court found that plaintiffs' complaint did not trigger coverage
under the policy's Civil Authority insuring agreement because: (1) the
governmental orders prohibited plaintiffs from ***operating*** their businesses but did

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA 94608
(510) 841-7777 - Facsimile (510) 841-7776

not prohibit **access** to their business premises, and (2) the orders otherwise were

not issued due to any direct physical loss or damage to property other than

plaintiffs' premises as the policy language requires.  *Id.* at *6.

    In addition to these decisions, other courts across the county which have addressed

COVID-related business income claims such as those of plaintiffs herein have also found they

are not covered under property insurance policies as a matter of law.[8]

---

[8]  In the following cases, federal district courts have found COVID-related business income loss claims not to be covered:

- *Henry's Lousiana Grill, Inc. v. Allied Ins. Co. of America*, 1:20-CV-2939, 2020 WL 5938755 (N.D. Georgia, Oct. 6, 2020).
- *Wilson v. Hartford Casualty Co.*, 20-CV-3384, 2020 WL 5820800 (E.D. Penn., Sept. 30, 2020).
- *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 4:20-CV-222-CRW-SB, 2020 WL 5820552 (S.D. Iowa, Sept. 29, 2020).
- *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known As Syndicate 4000 et al.*, 8:20-CV-1605-T-30AEP, 2020 WL 5791583 (M.D. Fla., Sept. 28, 2020).
- *Franklin EWC, Inc. et al. v. The Hartford Financial Services Group, Inc. et al.,* 20-CV-04434-JSC, 2020 WL 5642483 (N.D. Calif., Sept. 22, 2020).
- *Sandy Point Dental, PC v. The Cincinnati Insurance Company*, 20-CV-2160, 2020 WL 5630465 (E.D. Ill., Sept. 21, 2020).
- *Turek Enterprises, Inc. v. State Farm Mutual Automobile Insurance Company,* 20-CV-11655, 2020 WL 5258484 (N.D. Mich., Sept. 3, 2020).
- *Mauricio Martinez, DMD, P.A. v. Allied Insurance Company of America,* 2:20-CV-00401-FTM-66NPM, 2020 WL 5240218 (M.D. Fla., Sept. 2, 2020).
- *Malube, LLC v. Greenwich Insurance Company*, 20-CV-22615-WILLIAMS/TORRES, 2020 WL 5051581 (S.D. Fla., Aug. 26, 2020).
- *Diesel Barbershop, LLC et al. v. State Farm Lloyds*, 5:20-CV-461-DAE, 2020 WL 4724305 (W.D. Texas, Aug. 13, 2020).

In the following cases, state courts similarly have found COVID-related business income loss claims not to be covered:

- *The Inns By the Sea v. California Mutual Insurance Company,* No. 20CV001274 (Calif. Superior Ct., Monterey County, Aug. 6, 2020):  Court sustained insurer's demurrer to plaintiff's complaint.
- *Gavrilides Management Co. v. Michigan Ins. Co.*, No. 20-258-CB (Mich. Cir. Ct., Ingham, July 1, 2020):  Court granted insurer's motion for summary disposition.
- *Rose's 1, LLC, et. al. v. Erie Insurance Exchange*, No. 2020 CA 002424 B (DC Superior Court Aug. 6, 2020):  Court granted insurer's motion for summary judgment.

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA  94608
(510) 841-7777 - Facsimile (510) 841-7776

1

## VII.   CONCLUSION

For the reasons stated above, defendant OMI requests the Court dismiss the Complaint under Rule 12(b)(6) without leave to amend, for failure to state a claim on which relief may be granted, or enter summary judgment in favor of OMI under Rule 56.  The Complaint states no allegations of direct physical loss or damage to covered property which require coverage.

DATE:    October 15, 2020                          PACIFIC LAW PARTNERS, LLP


  /s/ David B.A. Demo
DAVID B.A. DEMO (SBN 153997)
Attorney for Defendant OREGON
MUTUAL INSURANCE COMPANY

Pacific Law Partners, LLP
2000 Powell Street, Suite 950
Emeryville, CA  94608
(510) 841-7777 – Facsimile (510) 841-7776

• *It's Nice, Inc. v. State Farm Fire and Cas. Co.*, No. 2020L000547 (Ill. Cir. Ct. of 18th Cir., Du Page County, Sept. 29, 2020):  Court granted insurer's motion to dismiss.