William F. "Chip" Merlin, Jr.
CA Bar No. 275936
cmerlin@merlinlawgroup.com
**MERLIN LAW GROUP**
777 S. Harbour Island Blvd.,
Suite 950
Tampa, FL 33602
Telephone: (813) 229-1000
Facsimile: (813) 229-3692

Victor J. Jacobellis
CA Bar No. 278988
vjacobellis@merlinlawgroup.com
Daniel J. Veroff
CA Bar No. 291492
dveroff@merlinlawgroup.com
**MERLIN LAW GROUP**
1160 Battery St East, Suite 100
San Francisco, CA 94111
Telephone: (415) 851-2300
Facsimile: (415) 960-3882

*Attorneys for Plaintiff*

Adam M. Moskowitz
(*to be admitted Pro Hac Vice*)
adam@moskowitz-law.com
Adam A. Schwartzbaum
(*to be admitted Pro Hac Vice*)
adams@moskowitz-law.com
Howard Bushman
(*to be admitted Pro Hac Vice*)
howard@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM**
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
Tel: (305) 479-5508

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| STEVEN BAKER AND MELANIA KANG D/B/A CHLOE'S CAFE, a California general partnership, individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>OREGON MUTUAL INSURANCE COMPANY, an Oregon Corporation,<br><br>Defendant. | Case No. 3:20-cv-05467-LB<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT UNDER RULE 12(B)(6), AND IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT UNDER RULE 56**<br><br>[Filed Concurrently with Plaintiffs' Request for Judicial Notice and Declaration of Victor J. Jacobellis re Evidence Offered In Support of Plaintiffs' Opposition]<br><br>Date: December 3, 2020<br>Time: 9:30 a.m.<br>Location: Magistrate Judge Laura Beeler, Via Webinar |

1

# TABLE OF CONTENTS

I.      INTRODUCTION...................................................................................7

II.     STATEMENT OF FACTS THAT MUST BE ACCEPTED AS TRUE ..................9

III.    ARGUMENT.......................................................................................9

    A.  Legal Standard Under Rule 12(b)(6) and Rule 56. ....................................9

    B.  Key Principles of Insurance Contract Interpretation. ..............................10

    C.  Chloe's Cafe Sufficiently Allege Coverage Falls Within the Business Income Insuring Agreement ..............................................................................11

        1.  Chloe's Cafe Plausibly Alleges a Covered Cause of Loss..........................11

        2.  The Plain and Ordinary Meaning of "Direct," "Physical," and "Loss of" Support Coverage When Viewed Through the Eyes of the Objectively Reasonable Policyholder .............................................................................13

            a. The Key Terms are Undefined, and Dictionary Definitions Support Chloe's Cafe's' Interpretation. .............................................13

            b. The Policy Term "Physical Loss" Cannot Have an Equivalent Meaning to "Physical Damage" Given the Policy's Use of the Disjunctive "Or." .................................................................14

            c. The Policy's Use of the Prepositions "Of" and "To" Require the Policy to Be Read in Favor of Coverage. ..................................16

            d. The Policy Explicitly Defines "Property Damage" as a Loss of Use Without Physical Injury to Property. ..................................18

        3.  "Direct Physical Loss or Damage" Is Not Limited to Physical Alterations ..............................................................................................18

        4.  The Policy's "Period of Restoration" Provision Does not Define the Terms "direct physical loss of or damage to" Property, Nor Restrict the Trigger of Coverage. ..................................................................................24

        5.  Legislative and Executive Enactments Establishing that the Outbreak of COVID-19 is "Direct Physical Loss or Damage" Further Confirm That Plaintiffs Have Sufficiently Stated a Claim ..........................................26

    D.  Chloe's Cafe's' Claims Are Covered by the Policy's "Civil Authority" Provision ............................................................................................27

        1.  Chloe's Cafe Sufficiently Alleges Entitlement to its "Civil Authority" Coverage ............................................................................................27

        2.  The Policy Does Not Require a Complete Prohibition of Access. ..........29

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT UNDER RULE 12(B)(6), AND IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT UNDER RULE 56

# <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                                      <u>Page</u>

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007))..................................................................................................................................9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) .............................................................9

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)....................9

*Anderson v Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......................................................................9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)*Anderson v Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .........................................................................................................................................................9

*Matsushita Elec. Indus. Co. v. Zenith Radio Co.*, 475 U.S. 574 (1986) ..........................................9

*Matsushita Elec. Indus.*, 475 U.S. at 587; *Intel Corp. v. Hartford Accident & Idem. Co.*, 952 F. 2d 1551, 1558 (9th Cir. 1991) ...........................................................................................10

*Eisenberg v. Ins. Co. of N. Am.*, 815 F. 2d 1285, 1289 (9th Cir. 1987)........................................10

*White v. Western Title Ins. Co.*, 40 Cal. 3d 870, 881 (1985) .........................................................10

*Cooper Cos. v. Transcontinental Ins. Co.*, 31 Cal. App. 4th 1094, 1104 (1995) ........................10

*Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 269 (1966) ......................................................................10

*Montrose Chem. Corp. of Calif. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 666–667 (1995).............10

*MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647-48 (2003) ..................................................10

*State of California v. Continental Ins. Co.*, 55 Cal.4th 186, 195 (2012) .......................................11

*C.H. Leavell & Co. v. Fireman's Fund Ins. Co.*, 372 F.2d 784, 787 (9th Cir. 1967)..................11

*Int'l Multifoods Corp. v. Com.Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) ........................11

*Julian v. Hartford Underwriters Ins. Co.*, 35 Cal. 4th 747, 759 (2005) ......................................12

*Vardanyan v. AMCO Ins. Co.*, 243 Cal. App. 4th 779, 792 n.3 (2015)........................................12

*Travelers Property Casualty Co. of Am. v. KLA-Tencor Corp.*, 45 Cal. App. 5th 156, 163 (2020)..........................................................................................................................................13

*Laurel v. Allstate Ins. Co.*, No. CV 09–3990 SVW (CTx), 2010 WL 11235326, at *8 (C.D. Cal. Feb. 3, 2010)........................................................................................................................13

*Acosta v. City of Costa Mesa*, 718 F.3d 800, 816 (9th Cir. 2013) ...............................................14

*ACL Techs., Inc. v. Northbrook Prop. & Cas. Ins. Co.,* 17 Cal. App. 4th 1773, 178 (1993) ......14

*Total Intermodal Services Inc. v. Travelers Property Casualty Company of America,* No. CV 17-04908 AB (KSx), 2018 WL 3829767, at *3–4 (C.D. Cal. July 11, 2018) ...................... 15

*Nautilus Group, Inc. v. Allianz Global Risks US*, No. C11-5281BHS, 2012 WL 760940, at *7 (W.D. Wash. Mar. 8, 2012) ........................................................................................... 15

*Manpower, Inc. v. Ins. Co. of the State of Penn.*, No. C11-5281BHS, 2009 WL 3738099, at *5 (E.D. Wis. Nov. 3, 2009) .............................................................................................. 15

*Studio 417, Inc., v. Cincinati Ins. Co.*, No. 20-cv-03127-SRB, 2020 WL 4692385, at *5, *7 (W.D. Mo. Aug. 12, 2020) ................................................................................... 15, 29

*California Fair Plan Assn. v. Garnes*, 11 Cal. App. 5th 1276, 1289 (2017) ........................... 16

*Turek Enterprises, Inc. v. State Farm Mut. Auto. Ins.*, No. 20-11655, 2020 WL 5258484, at *6 (E.D. Mich. Sept. 3, 2020) ...................................................................................... 16

*MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.*, 187 Cal. App. 4th 766 (2010) ........................................................................................................ 17

*Pappy's Barbershop, Inc. v. Farmers Group Inc.*, No. 20-CV-907-CAB-BLM, 2020 WL 5500221, at *1 (S.D. Cal. Sept. 11, 2020) ......................................................... 17

*Mark's Engine Co. No. 28 Restaurant, LLC v. Travelers Indem. Co. of Conn.*, No. 2:20-cv-04423-AB-SK, 2020 WL 5938689, at *3 (C.D. Cal Oct. 2, 2020) ................................ 17

*Maxconn Inc. v. Truck Ins. Exch.*, 74 Cal. App. 4th 1267, 1273 (1999), *as modified on denial of reh'g* (Oct. 15, 1999) ................................................................................. 18

*Hughes v. Potomac Ins. Co. of District of Columbia*, 199 Cal. App. 2d 239, 242 (1962) .......... 18

*La Bato v. State Farm Fire and Casualty Co.*, 263 Cal.Rptr. 382 (1989) ................................ 18

*Cooper v. Travelers Indemnity Company of Illinois*, No. C-01-2400-VRW, 2002 WL 32775680, at *5 (N.D. Cal. Nov. 4, 2002), *aff'd*, 113 F. App'x 198 (9th Cir. 2004) ............ 19

*Universal Sav. Bank v. Bankers Standard Ins. Co.*, 2004 WL 515952, at *6 (Cal. Ct. App. Mar. 17, 2004), *vacated*, 2004 WL 3016644 (Cal. Ct. App. Dec. 30, 2004) ................................ 20

*Three Sombrero, Inc. v. Scottsdale Ins. Co.*, 28 Cal. App. 5th 729 (2018) ............................. 20

*Nationwide Brokers Inc. v. C&G Trucking Corp.*, No. 87 C 5770, 1988 WL 116827, at *3 (N.D. Ill Oct. 21, 1988) .............................................................................................. 20

*Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1223 n.3 (9th Cir. 2015) ...................................... 20

*Chinese Manufactured Drywall Products Liab. Litig.*, 759 F. Supp. 2d 822, 832 (E.D. La. 2010) ................................................................................................... 20

*Forecast Homes,* 181 Cal. App. 4th at 1476 .................................................................... 21

*Mark's Engine*, 2020 WL 5938689, at *4 (citing *Plan Check Downtown III, LLC v. AmGuard Ins. Co.*, No. Cv 20-6954-GW-SKx, 2020 WL 5742712, at *6 (C.D. Cal. Sept. 10, 2020)).21

4

*Plan Check Downtown III, LLC v. AmGuard Ins. Co.*, No. Cv 20-6954-GW-SKx, 2020 WL 5742712, at *6 (C.D. Cal. Sept. 10, 2020)...................................................................... 21

*Waller v. Truck Ins. Exch., Inc.*, 900 P. 2d 619, 626 (Cal. 1995) ....................................... 21

*Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co. et al*, No. 3:20-cv-03750, 2020 WL 6562332 (N.D. Cal. Nov. 9, 2020).............................................................................. 22

*Gemini Ins. Co. v. Delos Ins. Co.*, 211 Cal. App. 4th 719, 724 (2012) ............................... 22

*Northrop Grumman Corp. v. Factory Mut. Ins. Co.*, No. CV 05–08444 DDP (PLAx), 2013 WL 3946103, at *12 (C.D. Cal. July 31, 2013) ...................................................... 22

*Hughes*, 199 Cal. App. 2d at 248-49 ...................................................................................... 22

*North State Deli LLC et al. v. Cincinnati Insurance Co. et al.,* No. 20-cvs-02569, *order issued* (N.C. Super. Ct., Durham Cty. Oct. 9, 2020)........................................................ 23

*Taps & Bourbon on Terrace, LLC v. Underwriters at Lloyds London*, No. 20-CVS-02569 (Pa. Ct. Com. Pl., Philadelphia Cnty. Oct. 26, 2020)................................................... 23

*Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1, 17 (W.Va. 1998) ............................... 23

*Manpower*, 2009 WL 3738099, at *5–7 ................................................................................ 23

*Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 2:12–cv–04418 (WHW)(CLW), 2014 WL 6675934, at *5 (D.N.J. Nov. 25, 2014)................................. 23

*Dundee Mut. Ins. Co. v. Marifjeren*, 587 N.W.2d 191, 194 (N.D. 1998) ............................. 23

*W. Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52, 55 (Colo. 1968)..................... 23

*Travco Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 708 (E.D. Va. 2010)................................... 23

*Sentinel Mgmt. Co. v. N.H. Ins. Co.*, 563 N.W.2d 296, 300 (Minn. Ct. App. 1997) ............ 23

*Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*, 250 F. Supp. 2d 1357, 1364 (M.D. Fla. 2003), *aff'd*, 362 F.3d 1317 (11th Cir. 2004) ...................................................... 23

*Prudential Prop. & Cas. Ins. Co. v. Lilliard-Roberts*, No. CV-01-1362- ST, 2002 WL 31495830, at * 9 (D. Or. June 18, 2002) ...................................................................... 23

*Gen. Mills, Inc. v. Gold Medal Ins. Co.*, 622 N.W.2d 147, 152 (Minn. Ct. App. 2001) ............. 23

*Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) ............. 23

*Cook v. Allstate Ins. Co.,* Case No. 48D02-0611-PL-01156 *9-10 (Ind. Super. Nov. 30, 2007) 23

*Blue Springs Dental Care, LLC v. Owners Ins. Co.*, No. 20-CV-00383-SRB, 2020 WL 5637963 (W.D. Mo. Sept. 21, 2020) ..................................................................................... 23

*K.C. Hopps, Ltd. v. Cincinnati Ins. Co., Inc.*, No. 20-cv-00437-SRB, 2020 WL 6483108, at *1 (W.D. Mo. Aug. 12, 2020) ..................................................................................... 23

5

*Optical Servs. USA v. Franklin Mut. Ins. Co.*, No. BER-L-3681-20 (N.J. Super. Ct. Aug. 13, 2020) at 26:10-15 .................................................................................................................23-24

*Paper Savers. Inc. v. NASCA,* 51 Cal. App. 4th 1090 (1996)....................................................... 24

*Ridley Park Fitness, LLC v. Phil. Indem. Ins. Co.*, No. 01093 (Pa. Dist. Ct. Aug. 31, 2020)..... 24

*Urogynecology Specialist of Fla. LLC v. Sentinel Ins. Co., Ltd.*, No. 6:20-cv-01174-ACC-EJK, 2020 WL 5939172, at *4 (M.D. Fla. Sept. 24, 2020) ............................................................. 24

*Francois Inc. v. Cincinnati Ins. Co.*, No. 20CV201416 (Oh. Cnty. Ct. Sept. 29, 2020) ............. 24

*Ingenico Holdings LLC v. Ace Am. Ins. Co.*, 921 F.3d 803, 820-21 (9th Cir. 2019)................... 25

*Factory Mut. Ins. Co. v. Peri Formworks Sys.*, 223 F. Supp. 3d 1133, 1138 (D. Or. 2016) ....... 26

*United States v. Mead Corp.*, 533 U.S. 218, 227 (2001) ............................................................. 26

*Narricot Indus., Inc. v. Fireman's Fund Ins. Co.*, No. 01-cv-4679, 2002 WL 31247972, at *4 (E.D. Pa. Sept. 30, 2002) ................................................................................................ 27, 29

*Sloan v. Phoenix of Hartford Ins. Co.*, 207 N.W.2d 434, 437 (Mich. Ct. App. 1973) ............... 27

*Syufy Enters. v. Home Ins. Co. of Ind.*, No. 94-cv-756, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995) ......................................................................................................................................... 27

*United Air Lines, Inc. v. Ins. Co. of Pa.*, 439 F.3d 128 (2d Cir. 2006)........................................ 28

*Philadelphia Parking Authority v. Federal Ins. Co.*, 385 F. Supp. 2d 280 (S.D.N.Y 2005)....... 28

*Syufy Enters.*, 1995 WL 129229, at *2 ....................................................................................... 28

*Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 686 (5th Cir. 2011) .................28-29

*Estate of Neff*, 271 F. App'x at 226 ............................................................................................. 29

*Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 867 (1993)........ 30

*Blankenship v. Liberty Life Assur. Co. of Bos.*, 486 F.3d 620, 625 (9th Cir. 2007) ................... 30

*Lang v. Long-Term Disability Plan of Sponsor Applied Remote Tech., Inc.*, 125 F.3d 794, 799 (9th Cir. 1997)........................................................................................................................... 30

## STATUTES and REGULATIONS

Federal Rule 12(b)(6)............................................................................................. 7, 9, 28, 30
Federal Rule 56................................................................................................................ 7, 9 ,30
Fed. R. Civ. Proc. 56(a) ............................................................................................................. 9
Fed. R. Civ. Proc. 56(c) ........................................................................................................... 10
Insurance Code § 2051............................................................................................................. 16

Plaintiffs, Steven Baker and Melania Kang d/b/a Chloe's Cafe ("Plaintiffs" or "Chloe's Cafe") submit this Memorandum of Points and Authorities In Opposition to Defendant Oregon Mutual Insurance Company's ("Defendant" or "Oregon Mutual") Motion to Dismiss Complaint under Rule 12(b)(6), and in the alternative, Motion for Summary Judgment under Rule 56 (the "Motion") [Doc. 10].

## I. INTRODUCTION

Plaintiffs Steven Baker and Melania Kang own and operate Chloe's Cafe, a decades-old San Francisco restaurant. Chloe's Cafe's property insurance company, Oregon Mutual, issued Chloe's Cafe an all-risk policy providing Business Interruption, Extra Expense, and Civil Authority coverages. These coverages insure risks resulting in "physical loss of or damage to property." Chloe's Cafe alleges that it experienced a "physical loss of . . . property" (resulting in major losses in revenue) due to the outbreak of COVID-19, a deadly virus which was undoubtedly present at and around Chloe's Cafe, and due to government closure orders that required Chloe's Cafe to close its dining room. Although Chloe's Cafe submitted a valid claim for coverage to Oregon Mutual based on the damages resulting from its physical loss of property, the insurance company denied the claim. Chloe's Cafe's class action complaint (the "Complaint" [Doc. 1]) alleges that Oregon Mutual is denying all similar COVID-19 business interruption claims and, therefore, Chloe's Cafe and similarly situated insureds are entitled to a declaratory judgment concerning the correct interpretation of Oregon Mutual's standard form insurance policies.

The Court should deny Oregon Mutual's motion to dismiss (or, in the alternative, motion for summary judgment regarding) Chloe's Cafe's Complaint because it sufficiently alleges coverage based on the plain language of the insurance policy. Chloe's Cafe's policy insures against **all** *risks* that are not specifically excluded and, unlike other insurers, Oregon Mutual specifically decided *not* to include the standard form virus exclusion in Chloe's Cafe's policy. Thus, losses caused by the virus are covered by the policy. Further, although the policy only

covers business income losses resulting from "physical loss of **or** damage to" property, Oregon Mutual left those terms undefined. Under settled principles of California insurance law, these undefined terms must be interpreted consistent with the objectively reasonable expectations of the policyholder and in the specific context of this claim. Here, an objectively reasonable policyholder operating a restaurant reliant on on-premises dining reasonably expects that the term "loss of . . . property" means the inability to use its premises for its intended purpose: on-premises dining. This interpretation is further supported by common dictionary definitions that define "loss of" to include loss of use.

The Court should reject Oregon Mutual's attempt to improperly limit claims for business interruption losses to situations where the property suffers physical damage. Because the policy affords coverage for physical loss **or** damage to property, an objectively reasonable insured would expect "loss of" to have a different meaning than "damage to," particularly given the broad nature of the term "physical damage," which the policy expressly defines to "[l]oss of **use** of tangible property **that is not physically injured**." Nothing in the policy informs the insured that coverage will be limited when a covered cause of loss, such as a deadly pandemic, causes the insured to experience a physical loss of its property. And Chloe's Cafe even alleges that the presence of the virus did cause physical damage to its property resulting in the loss. Thus, the policy covers the loss.

Finally, even if Oregon Mutual could persuade the court that an objectively reasonable policyholder could *also* interpret the policy to exclude virus losses despite the lack of an exclusion, under clear California law, the tie goes to the insured when the policy (which the insurer drafted and refused to negotiate the terms of) is ambiguous. The Court should deny the motion because Chloe's Cafe advances a credible interpretation of the policy that affords coverage.

Based on the foregoing arguments, all of which are derived from allegations in the Complaint that must be taken as true, the Court should conclude that Plaintiff adequately states a claim for declaratory judgment under the insurance contract Defendant issued to Chloe's Cafe.

## II.   STATEMENT OF FACTS THAT MUST BE ACCEPTED AS TRUE

Plaintiffs are co-owners of Chloe's Cafe restaurant in San Francisco, California. Compl. 1, ¶4. Plaintiffs obtained and paid premiums for an insurance policy from Defendant, which included business interruption coverage. *Id.* Under this coverage, Oregon Mutual promised to pay for Chloe's Cafe's actual business income loss so long as the suspension of business operations was "caused by direct physical loss of . . . property at the described premises." *Id.*, ¶¶ 15, 17, 18, 64, 71. When California and San Francisco issued Closure Orders to prevent the spread of COVID-19, Plaintiff was forced to suspend its business operations. *Id.*, ¶¶ 34, 45–46. Despite the interruptions caused by the Closure Orders, and notwithstanding that Chloe's Cafe paid significant premiums for precisely this type of coverage, Defendant improperly denied Chloe's Cafe's claims for coverage. *Id.*, ¶¶ 3, 50, 66, 73, 80.

## III.   ARGUMENT

### A.   Legal Standard Under Rule 12(b)(6) and Rule 56.

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

A court shall only grant summary judgment under Rule 56 where (1) there is no genuine dispute as to any material fact; and (2) the movant is *entitled to judgment as a matter of law*. Fed. R. Civ. Proc. 56(a). *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Co.*, 475 U.S. 574 (1986). The moving party bears the burden of making this initial showing and must identify for the Court "the basis for its motion, and [] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it

believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. Proc. 56(c)). In ruling on a motion for summary judgment, the court must draw all reasonable references in favor of the party against whom summary judgment is sought. *Matsushita Elec. Indus.*, 475 U.S. at 587; *Intel Corp. v. Hartford Accident & Idem. Co.*, 952 F. 2d 1551, 1558 (9th Cir. 1991). Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324 (emphasis added); *Eisenberg v. Ins. Co. of N. Am.*, 815 F. 2d 1285, 1289 (9th Cir. 1987).

### B. Key Principles of Insurance Contract Interpretation.

California's "well-established rules on interpretation of insurance agreements" are designed to "protect the insured's reasonable expectation of coverage in a situation in which the insurer-draftsman controls the language of the policy." *White v. Western Title Ins. Co.*, 40 Cal. 3d 870, 881 (1985). Thus, the insured's objectively "[r]easonable expectations control even if the parties had no actual mutual understanding regarding the disputed policy provision." *Cooper Cos. v. Transcontinental Ins. Co.*, 31 Cal. App. 4th 1094, 1104 (1995). These rules exist because an insurance policy has "consequences that extend beyond orthodox implications." *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 269 (1966). They are contracts "entered into between two parties of unequal bargaining strength, expressed in the language of a standardized contract, written by the more powerful bargainer to meet its own needs, and offered to the weaker party on a 'take it or leave it basis[.]'" *Id.* Thus, "in view of the disparate bargaining status of the parties, [courts] must ascertain that meaning of the contract which the insured would reasonably expect." *Id.*

Applying these canons, "[i]f the meaning a layperson would ascribe to the language of a contract of insurance is clear and unambiguous, a court will apply that meaning." *Montrose Chem. Corp. of Calif. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 666–667 (1995). As a corollary, insurance companies are required to interpret coverage provisions "broadly so as to afford the greatest possible protection to the insured," and to interpret exclusionary clauses "narrowly against the insurer." *Id.*; *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647-48 (2003). "This rule applies with particular force when the coverage portion of the insurance policy would lead an insured to

10

reasonably expect coverage for the claim purportedly excluded." *McKinnon*, 31 Cal. 4th at 648. In the situation where a "reasonable person in the position of the insured" could interpret a policy provision both for and against coverage, the ambiguity is "construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage." *State of California v. Continental Ins. Co.*, 55 Cal.4th 186, 195 (2012).

### C. Chloe's Cafe Sufficiently Alleges Coverage Falls Within the Business Income Insuring Agreement.

#### 1. Chloe's Cafe Plausibly Alleges a Covered Cause of Loss.

Chloe's Cafe's policy is an "all-risk" policy. Compl., ¶ 13. In accordance with the policy's all-risk nature, Defendant agreed to pay for all losses caused by a "Covered Cause of Loss," which is defined as any "risk of direct physical loss" unless the loss is excluded or limited in the policies. *Id.*, ¶ 14. Here, Chloe's Cafe sufficiently pled that it suffered physical loss due to its loss of business income caused by the mandatory COVID-19 closure orders issued in response to COVID-19's presence in public spaces.

It is well-settled that an "all-risk" policy "creates a special type of coverage extending to risks not usually covered under other insurance[.]" *C.H. Leavell & Co. v. Fireman's Fund Ins. Co.*, 372 F.2d 784, 787 (9th Cir. 1967). "[R]ecovery under an 'all-risk' policy will be allowed for **all** fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding the loss from coverage." *Id.*; *see also Int'l Multifoods Corp. v. Com.Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) ("All risk coverage covers all losses which are fortuitous no matter what caused the loss[.]").

Chloe's Cafe alleges "[a]s a result of the presence of COVID-19 and the Closure Orders. Plaintiff[s] . . . sustained a suspension of business operations, sustained losses of business income, and incurred extra expenses" and further alleges they, "sustained business income losses due to direct physical loss or physical damage at the premises of dependent properties." Compl., ¶ 46. Nothing in the policies excludes or limits losses caused by those orders (*id.*, ¶ 24), and the fortuitous character of the loss is not in dispute. The Closure Orders, therefore, constitute a

"Covered Cause of Loss" as defined in the policy.

Further, the policy utilizes, in part, policy forms and language published by the Insurance Services Office, Inc. ("ISO"), which publishes policy forms for use by the insurance industry—as evidenced by the ISO copyright designation at the bottom of some pages of the policy. *Id.*, ¶ 22. Despite the fact that, prior to the effective date of the policy, ISO published and made available for use a standard virus exclusion form, Oregon Mutual chose not to include the ISO standard virus exclusion form in the policy. *Id.*, ¶ 22. Indeed, the word "virus" only appears in the policy when discussing *computer* viruses. *Id.*

Defendant suggests the Closure Orders are not a Covered Cause of Loss, reasoning that the Closure Orders "were not issued due to any direct physical loss to property." Mot. at 16. This argument is belied by the fact that Defendant's policies exclude the "seizure or destruction of property ***by order of governmental authority***." Doc. 11-5 at 48. If governmental orders were not a Covered Cause of Loss, no exclusion would be necessary. Therefore, by drafting the exclusion, Defendant acknowledges that governmental orders represent a Covered Cause of Loss. If Defendant wanted to exclude losses other than seizure or destruction caused by governmental orders, such as for the closure or limitation on u se of property, it could have done so—but it did not. *See Julian v. Hartford Underwriters Ins. Co.*, 35 Cal. 4th 747, 759 (2005) ("[A]n insurer is not absolutely prohibited from drafting and enforcing policy provisions that provide or leave intact coverage for some, but not all, manifestations of a particular peril.").

More importantly, Defendant's argument ignores that "the limits of coverage [in an all-risk policy] are defined by the exclusions," *Vardanyan v. AMCO Ins. Co.*, 243 Cal. App. 4th 779, 792 n.3 (2015), and that coverage clauses, such as the Civil Authority provision, do not purport to define the nature of the risks covered. The Covered Cause of Loss focuses solely on whether the ***cause*** of the loss is a covered peril. In an "all-risk" policy this analysis is simple. If the loss is fortuitous, the cause is covered unless specifically excluded. Because the Closure Orders are not

excluded,[1] Chloe's Café plausibly alleges a Covered Cause of Loss.[2]

Further, Chloe's Cafe plausibly alleges direct physical loss of its property. "The presence of COVID-19 caused direct physical loss of and/or damage to the [property] . . . by . . ., damaging the property, denying access to the property, preventing customers and patients from physically occupying the property, causing the property to be physically uninhabitable by customers . . . causing its function to be nearly eliminated or destroyed, and/or causing a suspension of business operations on the premises." *Id.*, ¶ 44.

### 2. The Plain and Ordinary Meaning of "Direct," "Physical," and "Loss of" Support Coverage When Viewed Through the Eyes of the Objectively Reasonable Policyholder.

The policy's plain language supports coverage in the absence of tangible alteration to insured property. "The rules governing policy interpretation require us to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Travelers Property Casualty Co. of Am. v. KLA-Tencor Corp.*, 45 Cal. App. 5th 156, 163 (2020). Here, Chloe's policy insures against "direct physical loss of or damage to" insured property. Doc. 11-5 at 118. An average person reading this language would expect coverage was triggered in this case for several reasons.

### a. The Policy's Key Terms Are Undefined, and Dictionary Definitions Support Chloe's Cafe's' Interpretation.

The words "physical," "loss," and "damage" are undefined in the policy. "[C]ourts in insurance cases regularly turn to general dictionaries" to ascertain the plain meaning of undefined words. *Laurel v. Allstate Ins. Co.*, No. CV 09–3990 SVW (CTx), 2010 WL 11235326, at *8 (C.D. Cal. Feb. 3, 2010). The dictionary defines "loss" as "destruction, ruin" *or* "the act of losing

---

[1] The virus exclusion only applies when the virus contaminates the property (Compl., ¶23), and Chloe's Cafe's policy admittedly does not include a virus exclusion. The exclusion for "enforcement of any ordinance of law" also has no bearing on this dispute.

[2] The same analysis applies for Chloe's Cafe's alternative claim that the physical presence of the virus caused physical loss of or damage to insured property. Because no exclusions apply, the virus, too, is a Covered Cause of Loss.

possession: deprivation."[3] "Physical" means "having material existence: perceptible especially through the senses and subject to the laws of nature."[4] And "damage" is defined as "injury to a person or property."[5] These definitions illustrate a layperson would expect "physical loss" occurs when an insured is "deprived" of using property with a material existence for its intended purpose.

> **b.** **The Policy Term "Physical Loss" Cannot Have an Equivalent Meaning to "Physical Damage" Given the Policy's Use of the Disjunctive "Or."**

The use of the disjunctive "or" demonstrates that "physical loss" is different from "physical damage." "The ordinary and popular meaning of the word 'or' is well settled." *Acosta v. City of Costa Mesa*, 718 F.3d 800, 816 (9th Cir. 2013). "In its ordinary sense, the function of the word 'or' is to mark an alternative such as 'either this or that.'" *Id.* Therefore, a reasonable interpretation of Chloe's Cafe's policy is that ***either*** physical loss ***or*** physical damage triggers coverage.

Although Defendant asserts that coverage is only triggered when the insured property is "physically damaged" (Mot. at 10), this is a flawed reading of the policy. Defendant's erroneous position improperly collapses "loss" and "damage" into the same meaning—which not only ignores the plain meaning of the word "or," but violates a cardinal principle of contract interpretation as Defendant's reading would render the term "loss" redundant surplusage. *See ACL Techs., Inc. v. Northbrook Prop. & Cas. Ins. Co.,* 17 Cal. App. 4th 1773, 178 (1993) (explaining that "in California, however, contracts – even insurance contracts – are construed to avoid rendering terms surplusage[,]" and that "defining terms in contracts to render them redundant is contrary to established principles of contract interpretation as laid down by our Supreme Court").

---

[3] Loss, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/loss (last visited Nov. 11, 2020).

[4] Physical, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/ physical (last visited Nov. 11, 2020).

[5] Damage, Black's Law Dictionary (11th ed. 2019).

Persuasive orders in California's district courts support Chloe's Cafe's argument. For example, in *Total Intermodal Services Inc. v. Travelers Property Casualty Company of America,* No. CV 17-04908 AB (KSx), 2018 WL 3829767, at *3–4 (C.D. Cal. July 11, 2018), the district court rejected an interpretation of the same policy language identical to that proposed by Oregon Mutual. The court found that interpreting "'physical loss of' as requiring 'damage to' would render meaningless the '*or* damage to' portion of the same clause, *thereby violating a black-letter cannon of contract interpretation—that every word be given meaning.*" *Id.* at *3 (emphasis added).[6]

Other district courts, both within and outside this Circuit, are in accord. *See Nautilus Group, Inc. v. Allianz Global Risks US*, No. C11-5281BHS, 2012 WL 760940, at *7 (W.D. Wash. Mar. 8, 2012) ("[I]f 'physical loss' was interpreted to mean 'damage,' then one or the other would be superfluous. The fact that they are both included in the grant of coverage evidences an understanding that physical loss means something other than damage."); *Manpower, Inc. v. Ins. Co. of the State of Penn.*, No. C11-5281BHS, 2009 WL 3738099, at *5 (E.D. Wis. Nov. 3, 2009) ("[I]f a physical loss could not occur without physical damage, then the policy would contain surplus language."); *Studio 417, Inc., v. Cincinnati Ins. Co.*, No. 20-cv-03127-SRB, 2020 WL 4692385, at *5 (W.D. Mo. Aug. 12, 2020) ("Defendant conflates 'loss' and 'damage' in support of its argument that the Policies require a tangible, physical alteration. However, the Court must give meaning to both terms."). Indeed, the *Studio 417* court relied on this principled distinction

---

[6] In *Mudpie, Inc. v. Travelers Casualty Insurance Company of America*, No. 20-cv-03213-JST, 2020 WL 5525171 (N.D. Cal. Sept. 14, 2020), another court in this district correctly found, "[i]n accordance with the reasoning in *Total Intermodal,*" that "the language of this provision, alone, does not require a 'physical alteration of the property' or a physical change in the condition of the property." *Id.* at *4. Nevertheless, the *Mudpie* court dismissed the business interruption claim because the plaintiff had not been "permanently dispossessed" of its property. *Id.* at *4–*5. This Court should reject this aspect of *Mudpie*'s interpretation of "physical loss of . . . property" because it inserts a requirement of "permanent dispossession" into the policy where one does not exist. *See Forecast Homes, Inc. v. Steadfast Ins. Co.,* 181 Cal. App. 4th 1466, 1476 (2010) (explaining the court's "function is to determine what, in terms and substance, is contained in the contract, *not to insert what has been omitted*. [The court] do[es] not have the power to create for the parties a contract that they did not make and *cannot insert language that one party now wishes were there*") (emphases added); *see also infra* at 13–14. The Court should distinguish orders that repeat this error. *See, e.g., 10E, LLC v. Travelers Indemnity Co. of Connecticut,* No. 2:20-CV-04418-SVW-AS, 2020 WL 5359653, at *5 (C.D. Cal. Sept. 2, 2020) (erring by granting motion to dismiss business interruption case based on plaintiff's inability to allege that its dispossession of its premises was not permanent).

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT UNDER RULE 12(B)(6), AND IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT UNDER RULE 56**

between loss and damage to *deny* a motion to dismiss similar business interruption claims. *Studio 417*, 2020 WL 4692385, at *5 (concluding "that Plaintiffs have adequately stated a claim for direct physical loss"). This Court should do the same here.

### c. The Policy's Use of the Prepositions "Of" and "To" Require the Policy to Be Read in Favor of Coverage.

Not only are "loss" and "damage" distinct concepts, but the use of the prepositions "of" and "to" are distinct modifiers as well. The California Court of Appeals, when discussing the phrase "total loss *to* the structure" as used in section 2051 of the Insurance Code, observed the following:

> [I]n the statute the object phrase—'total loss'—operates upon the subject phrase—'a structure'—by way of the preposition 'to.' *Had the Legislature used the word 'of', or used a different sort of construction*, such as 'where a structure is a total loss', *there might be some ambiguity*. But total loss *to* a structure unmistakably contemplates a quantum of physical damage[.]

*California Fair Plan Assn. v. Garnes*, 11 Cal. App. 5th 1276, 1289 (2017).

Similarly, a California federal district court has recognized that coverage clauses using the prepositions "of" and "to" are materially distinguishable. In *Total Intermodal*, the insurer, like Oregon Mutual , claimed that some "damage or alteration to the property" was required to trigger coverage, 2018 WL 3829767 at *3–4, but relied on cases interpreting coverage clauses that "omit[ted] the preposition 'of.'" *Id.* at 4. Based on the divergent policy language the court rejected the insurer's argument and held "that 'direct physical loss of' should be construed differently from 'direct physical loss to" (*id.* at *4), and that the plain meaning of "loss of" contemplates property which is "misplaced and unrecoverable, *without regard to whether it was damaged.*" *Id.* at *3 (emphasis added).[7]

---

[7] *See also Turek Enterprises, Inc. v. State Farm Mut. Auto. Ins.*, No. 20-11655, 2020 WL 5258484, at *6 (E.D. Mich. Sept. 3, 2020) ("Plaintiff's interpretation [that 'physical loss to Covered Property includes inability to use Covered Property'] would be plausible if, instead, the term at issue were "accidental direct physical loss *of* Covered Property.") (emphasis in original).

Defendant relies on *MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.*, 187 Cal. App. 4th 766 (2010), for the proposition that "physical loss" of property requires physical alteration to the property. Mot. at 11–13. In *MRI Healthcare*, however, the policy covered "direct physical loss *to* property," 187 Cal. App. 4th at 771, not the "direct physical loss *of*" property language here. *See Total Intermodal*, 2018 WL 3829767, at *3–4. The court in *MRI Healthcare* also cited *Couch on Insurance* to support its finding that "physical loss" requires physical alteration. 187 Cal. App. 4th at 778–79. But that treatise recognizes that "the opposite result has been reached" and coverage has been allowed "based on physical damage despite the lack of physical alteration of the property." 10A Couch on Insurance, §148.46 (3d ed. 2020). Thus, *MRI Healthcare* actually *supports* Chloe's Café's argument that the use of different prepositions in these clauses makes a material difference to their interpretations.

Courts relying on *MRI Healthcare* to dismiss business interruption cases have missed the critical distinction between loss *to* property and loss *of* property. For example, in *10E, LLC*, 2020 WL 5359653 at *4 (*see* Mot. at 21–22), the court relied on *MRI Healthcare* for the proposition that "physical loss of or damage to property" requires some physical alteration to the property. As discussed above, however, "loss" and "damage" are not synonymous, and construing them to be the same would make one of the terms meaningless. *See supra* at 7-8.[8] Further, the court's analysis in *10E* does not cite or discuss several decisions cited herein recognizing that "physical loss" includes the loss of use of property, or when property has become useless, uninhabitable, and unfit for occupancy, irrespective of any related physical damage. *See infra* at 16. In light of these cases, requiring a permanent displacement or dispossession for a "physical loss" would be an unachievable condition that would render Chloe's coverage illusory.

---

[8] Defendant relies upon two other cases that incorporate the reasoning of *10E*, which are therefore equally distinguishable. *See Pappy's Barbershop, Inc. v. Farmers Group Inc.*, No. 20-CV-907-CAB-BLM, 2020 WL 5500221, at *1 (S.D. Cal. Sept. 11, 2020) (granting defendant's motion to dismiss "[f]or all the same reasons" set forth in *10E*); *Mark's Engine Co. No. 28 Restaurant, LLC v. Travelers Indem. Co. of Conn.*, No. 2:20-cv-04423-AB-SK, 2020 WL 5938689, at *3 (C.D. Cal Oct. 2, 2020) ("The Court finds persuasive the reasoning [in *10E*] of the Honorable Steven V. Wilson.").

### d. The Policy Explicitly Defines "Property Damage" as a Loss of Use Without Physical Injury to Property.

In construing an insurance contract, a court must give effect to the instrument as a whole and, if possible, to every part thereof. *See Maxconn Inc. v. Truck Ins. Exch.*, 74 Cal. App. 4th 1267, 1273 (1999), *as modified on denial of reh'g* (Oct. 15, 1999). Chloe's Cafe's policy defines "property damage" as both "[p]hysical injury to tangible property, including all resulting loss of use of that property" *and* "[l]oss of *use* of tangible property *that is not physically injured*." Doc. No. 11-5 at 153. For the terms "physical loss" and "physical damage" to have consistent meanings, "physical loss of or damage to property" must include situations where property is rendered functionally unusable, even when that property is "not physically injured." *Maxconn, Inc*, 74 Cal. App. 4th at 1273 (explaining that courts should "interpret the language in context, with regard to its intended function in the policy"). A contrary interpretation of "physical loss of . . . property" ignores the policy's definition of "physical damage" and therefore subverts the "insured's objectively reasonable expectations." *Id.*

Accordingly, the plain language of Chloe's Cafe's policy establishes coverage.

### 3. "Direct Physical Loss or Damage" Is Not Limited to Physical Alterations.

Defendant contends Chloe's Cafe's business interruption losses are not covered because they suffered no demonstrable, physical change to their property, and, therefore, no "direct physical loss." Mot. at 13–15. Putting aside that "physical alteration" (or words to that effect) is found nowhere in and not required by the policy, Defendant's incorrect assertion ignores that, under California law, physical alteration to the property is *not* necessary to constitute a "physical loss."

For example, in *Hughes v. Potomac Ins. Co. of District of Columbia*, 199 Cal. App. 2d 239, 242 (1962), *abrogated on other grounds*, *La Bato v. State Farm Fire and Casualty Co.*, 263 Cal.Rptr. 382 (1989), the insureds' purchased a policy that provided coverage for "all risks of physical loss of and damage to their dwelling." Later, a landslide left the insureds' home on the

18

precipice of a 30-foot cliff, but the home itself was undamaged. The insurer denied coverage, claiming that the home suffered no physical damage. The California Court of Appeals rejected this position, holding:

> To accept appellant's interpretation of its policy would be to conclude that a building which has been overturned or which has been placed in such a position as to overhang a steep cliff has not been 'damaged' so long as its paint remains intact and its walls still adhere to one another. *Despite the fact that a 'dwelling building' might be rendered completely useless to its owners, appellant would deny that any loss or damage had occurred unless some tangible injury to the physical structure itself could be detected.* **Common sense requires that a policy should not be so interpreted in the absence of a provision specifically limiting coverage in this manner.** Respondent's correctly point out that a 'dwelling' or 'dwelling building' connotes a place fit for occupancy, a safe place in which to dwell or live.

*Id.* at 248–49.

Similarly, in *Cooper v. Travelers Indemnity Company of Illinois*, No. C-01-2400-VRW, 2002 WL 32775680, at *5 (N.D. Cal. Nov. 4, 2002), *aff'd*, 113 F. App'x 198 (9th Cir. 2004), this Court found that structural damage was unnecessary to trigger coverage. There, a health department forced a tavern to close when its source of water became contaminated with E. coli. *Id.* at *1. The insured, like Plaintiffs, had an all-risk policy that provided coverage for "direct physical loss of or damage to Covered Property" *Id.* at *1–2. Although this Court found coverage was triggered because E. coli caused physical damage to the property, it also explained that "*[d]amage to 'covered' property is not required* by the terms of the policy to trigger coverage of loss of business income." *Id.* at 5 (emphasis added).

The court reached a similar result in *Total Intermodal*. There, the insured picked up two containers of printing equipment at the Port of Los Angeles, but mistakenly marked one of the containers empty and it was shipped back to China. 2018 WL 3829767, at *1. The insured argued the claim was covered because the container was "lost" in that it was unrecoverable from China, while the insurer contended no coverage existed because the property had to be physically damaged. *Id.* at *1. Thus, the parties disputed "whether the coverage for 'direct physical loss' applies when property is merely lost, or whether it also—or instead—requires that the property be physically damaged." *Id.* at *3. This Court found the "plain language" of the policy, providing

coverage for "'loss of' property," was "irreconcilable" with the insurer's "position requiring damage" (*id.* at *4), and concluded that "the phrase 'loss of' includes . . . permanent dispossession[.]" *Id.* In reaching this decision, the court clarified that the permanency of the dispossession was immaterial, as the issue resolved was "simply whether the phrase 'loss of' *includes* physical dispossession in the absence of physical damage." 2018 WL 3829767, at *4 n.4 (emphasis added). Thus, the permanent nature of the loss in *Total Intermodal* merely reflected the facts of the case. Had the property eventually made its way back to the insured, the result would have been the same.[9] Permanent dispossession was meant to be an *example*, not the *definition*, of "loss of" property, which is established by the court's pronouncement that it used the word "includes" to "make clear that its construction is *non-limiting*." *Id.* (emphasis added).

Likewise, the California Court of Appeals has held that the "plain meaning of 'direct physical loss' encompasses physical displacement or loss of physical possession." *Universal Sav. Bank v. Bankers Standard Ins. Co.*, 2004 WL 515952, at *6 (Cal. Ct. App. Mar. 17, 2004), *vacated*, 2004 WL 3016644 (Cal. Ct. App. Dec. 30, 2004).[10] The court further noted that the "terms 'loss' and 'damage' in the context of the insuring clause does ***not*** suggest that the terms are synonymous." *Id.* (emphasis added).

The discussion of "property damage"[11] in *Three Sombrero, Inc. v. Scottsdale Ins. Co.*, 28 Cal. App. 5th 729 (2018) is also instructive. There, the insured lost its license to operate a nightclub following a shooting at the premises. *Id.* at 733. The insurer argued the loss of the license was a loss of an intangible right to use property in a certain way, as opposed to the loss of use of tangible property. *Id.* at 734. The trial court agreed, finding the insured only suffered an

---

[9] *See, e.g., Nationwide Brokers Inc. v. C&G Trucking Corp.*, No. 87 C 5770, 1988 WL 116827, at *3 (N.D. Ill Oct. 21, 1988) (holding magazines that were lost in transit for several weeks, but were eventually found, qualified as a "physical loss" because the policy was not limited to "*permanent* physical losses") (emphasis in original).

[10] Although this case is unpublished, and therefore has no precedential value under California law, the Ninth Circuit recognizes that it "is not precluded from considering such decisions as a possible reflection of California law." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1223 n.3 (9th Cir. 2015).

[11] *In re Chinese Manufactured Drywall Products Liab. Litig.*, 759 F. Supp. 2d 822, 832 (E.D. La. 2010) (using property damage definition from liability section to help define physical loss in the first-party homeowners policy).

economic loss. *Id.* The California Court of Appeals reversed, finding the loss of the ability to use the property as a nightclub constituted a covered loss. *Id.* at 734–35. After explaining that a "lessee in possession has a tangible property interest in the leased premises," the court noted:

> If your leased apartment was rendered uninhabitable by some noxious stench, you would conclude that you had lost the use of tangible property; and if the lawyer said no, actually you had merely lost the use of your intangible lease, you would goggle in disbelief.

*Id.* at 738.

These cases establish that the plain meaning of "direct physical loss" encompasses physical displacement or loss of physical possession of insured property. That the "physical loss" is unaccompanied by "physical damage" is irrelevant. *See Cooper*, 2002 WL 32775680, at *5. Here, there are no contractual provisions in Chloe's Cafe's policy limiting coverage to instances where the insured property suffered a distinct, demonstrable, physical alteration. To give credence to Defendant's fabricated pre-conditions to coverage would improperly "create for the parties a contract that they did not make" by "inserting language that [Defendant] now wishes were there." *Forecast Homes,* 181 Cal. App. 4th at 1476.

This Court should distinguish cases which ignore both the language of the policy and California insurance law to impose a "physical change" requirement. For example, in *Mark's Engine*, the court observed that the policy "would be without any 'manageable bounds' if "direct physical loss of" encompassed "deprivation of property without physical change in the condition of the property." *Mark's Engine*, 2020 WL 5938689, at *4 (citing *Plan Check Downtown III, LLC v. AmGuard Ins. Co.*, No. Cv 20-6954-GW-SKx, 2020 WL 5742712, at *6 (C.D. Cal. Sept. 10, 2020)). The *Plan Check* court concluded that "[plaintiff's] interpretation is not a reasonable one because it would be a sweeping expansion of insurance coverage without any manageable bounds." The orders overlook that, to trigger coverage under an "all-risk" policy, the loss must still be *fortuitous*. *See Waller v. Truck Ins. Exch., Inc.*, 900 P. 2d 619, 626 (Cal. 1995) ("This concept of fortuity is basic to insurance law."). "All risk" policies insure against "contingent or unknown risks of harm," but not risks, such as alterations to an occupancy code or amendments

to an ordinance, which are "certain or expected." *Id.* The Court should reject the reasoning of these cases because they improperly transform Plaintiff's "all risk" policy into an "all loss" policy.

Defendant may also cite to the Court's recent ruling in *Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co. et al,* No. 3:20-cv-03750, 2020 WL 6562332 (N.D. Cal. Nov. 9, 2020), to argue that the "mere threat of coronavirus" does not cause a direct physical loss of or damage to covered properties. But an insured business should not be required to remain open such that its customers and employees first must get sick and possibly die before insurance benefits are due and owing. This would implicate a public policy concern and lead to an absurd result. See *Gemini Ins. Co. v. Delos Ins. Co.*, 211 Cal. App. 4th 719, 724 (2012) (refusing to adopt interpretation of policy exclusion that would lead to an absurd result). Moreover, accepting Defendant's argument would subvert the purpose of business interruption insurance. *See Northrop Grumman Corp. v. Factory Mut. Ins. Co.*, No. CV 05–08444 DDP (PLAx), 2013 WL 3946103, at *12 (C.D. Cal. July 31, 2013) (noting the purpose of business interruption insurance is to "indemnify the insured against losses arising from [its] inability to continue the normal ***operations and functions*** of [its] business").

Precedent and plain policy language demonstrate that when property is rendered useless to its owners and no longer remains fit for occupancy, there has been a "physical loss." *See Hughes*, 199 Cal. App. 2d at 248-49. So, too, when an insured with a tangible interest in property loses the ability to use that property. *See Total Intermodal*, 2018 WL 3829767 at *3-4; *Thee Sombrero*, 28 Cal. App. 5th at 738. This is the exact type of "physical loss" Plaintiffs allege here. Compl, ¶¶ 44–46. Thus, California law firmly supports coverage. Moreover, Courts outside of California also widely agree that the loss of functionality, use, or access to a property constitutes

///

///

///

a direct physical loss of property regardless of structural damage.[12]

Additionally, several courts in the COVID-19 business-interruption context have denied insurers' motions to dismiss and found that a direct physical loss may occur absent physical alteration. *See* Order, *North State Deli LLC et al. v. Cincinnati Insurance Co. et al.,* No. 20-cvs-02569, *order issued* (N.C. Super. Ct., Durham Cty. Oct. 9, 2020) (finding closure orders triggered coverage because "physical loss" can reasonably be read to mean "the inability to utilize or possess something" without any physical alteration) (attached as **Exhibit A**); Order, *Taps & Bourbon on Terrace, LLC v. Underwriters at Lloyds London*, No. 20-CVS-02569 (Pa. Ct. Com. Pl., Philadelphia Cnty. Oct. 26, 2020) (finding loss of use constitutes "physical loss" under the policy) (attached as **Exhibit B**).[13]

---

[12] *See Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1, 17 (W.Va. 1998) (losses that rendered insured property "unusable or uninhabitable, may exist in the absence of structural damage to the insured property"); *Manpower*, 2009 WL 3738099, at *5–7 (inaccessibility of personal property constituted a physical loss); *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 2:12–cv–04418 (WHW)(CLW), 2014 WL 6675934, at *5 (D.N.J. Nov. 25, 2014) ("[P]roperty can be physically damaged, without undergoing structural alteration, when it loses its essential functionality."); *Dundee Mut. Ins. Co. v. Marifjeren*, 587 N.W.2d 191, 194 (N.D. 1998) (coverage applied without physical alteration because the covered properties "no longer performed the function for which they were designed"); *W. Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52, 55 (Colo. 1968); (gasoline saturation under and around a church rendering occupancy unsafe constituted a "direct physical loss within the meaning of that phrase"); *Travco Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 708 (E.D. Va. 2010) (noting that the majority of cases nationwide find that physical damage to property is not necessary where, at least, the property has been rendered unusable by a covered cause of loss); *Sentinel Mgmt. Co. v. N.H. Ins. Co.*, 563 N.W.2d 296, 300 (Minn. Ct. App. 1997) ("Direct physical loss also may exist in the absence of structural damage to the insured property."); *Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*, 250 F. Supp. 2d 1357, 1364 (M.D. Fla. 2003), *aff'd*, 362 F.3d 1317 (11th Cir. 2004) (finding "'direct physical loss' includes more than losses that harm the structure of the covered property"); *Prudential Prop. & Cas. Ins. Co. v. Lilliard-Roberts*, No. CV-01-1362- ST, 2002 WL 31495830, at * 9 (D. Or. June 18, 2002) (citing case law for the proposition that "the inability to inhabit a building [is] a 'direct, physical loss' covered by insurance"); *Gen. Mills, Inc. v. Gold Medal Ins. Co.*, 622 N.W.2d 147, 152 (Minn. Ct. App. 2001) ("[D]irect physical loss can exist without actual destruction of property or structural damage to property."); *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) ("When the presence of large quantities of asbestos in the air of a building is such as to make the structure uninhabitable and unusable, then there has been a distinct [physical] loss to its owner"); *Cook v. Allstate Ins. Co.,* Case No. 48D02-0611-PL-01156 *9-10 (Ind. Super. Nov. 30, 2007) ("even where *some utility remains*" in a business operation, a physical condition that renders a property unusable for its intended use constitutes physical loss or damage.)

[13] *See also Studio 417*, 2020 WL 4692385, at *5-6 (finding plaintiffs "adequately alleged a direct physical loss under the Policies" after noting that "[o]ther courts have similarly recognized that even absent a physical alteration, a physical loss may occur when the property is uninhabitable or unusable for its intended purpose."); *Blue Springs Dental Care, LLC v. Owners Ins. Co.*, No. 20-CV-00383-SRB, 2020 WL 5637963 (W.D. Mo. Sept. 21, 2020) (same); Order, *K.C. Hopps, Ltd. v. Cincinnati Ins. Co., Inc.*, No. 20-cv-00437-SRB, 2020 WL 6483108, at *1 (W.D. Mo. Aug. 12, 2020) (denying defendant's motion to dismiss for "the same reasons as those in [] *Studio 417* . . . ."); *see also* Transcript and Order, *Optical Servs. USA v. Franklin Mut. Ins. Co.*, No. BER-L-3681-20 (N.J. Super. Ct. Aug.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT UNDER RULE 12(B)(6), AND IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT UNDER RULE 56**

Thus, Defendants' argument that physical alteration to property is required to allege a "direct physical loss of" property is without merit.

### 4. The Policy's "Period of Restoration" Provision Does Not Define the Terms "Direct Physical Loss of or Damage to" Property, Nor Restrict the Trigger of Coverage.

Defendant's argument that the policy's "period of restoration" provision (which provides coverage through the time that the property "should be repaired, rebuilt, or replaced") requires a physical alteration of property to trigger business income coverage, fails for two reasons.

First, inserting a restriction on coverage in this fashion is prohibited by California law. An insurer has an affirmative obligation to bring to the policyholder's attention provisions which would restrict coverage in a manner inconsistent with a policyholder's expectation. See *Paper Savers. Inc. v. NASCA,* 51 Cal. App. 4th 1090 (1996) (rejecting an insurer's contention that, as a result of a policyholder's obligation to read its policy, a policyholder was automatically bound by all of the terms of a later-delivered policy). Here, no reasonable policyholder would expect that the "period of restoration," which sets the duration of business income coverage, would impose a requirement to coverage in the first instance—that the property has to be physically altered to trigger coverage. In fact, other language in the Policy indicates that coverage will run through "Resumption of Operations." Doc. 11-5 at 135. Nor would the average policyholder look at the "period of restoration" section of the Policy for that purpose. As a result, Defendant cannot rely on the period of restoration language, which clarifies the *duration* of coverage, to impose a limitation on the *trigger* of coverage.

13, 2020) at 26:10-15 (finding defendant's "blanket statement" that "the closure of the plaintiff's business does not qualify . . . for purposes of coverage" is "unsupported by" the "common law in the State of New Jersey" and the "policy language") (attached as **Exhibit D** and **Exhibit E**, respectively); Order, *Ridley Park Fitness, LLC v. Phil. Indem. Ins. Co.*, No. 01093 (Pa. Dist. Ct. Aug. 31, 2020) (overruling defendant's demurrer and finding "plaintiff successfully pled to survive this stage of the proceedings") (attached as **Exhibit F**); *Urogynecology Specialist of Fla. LLC v. Sentinel Ins. Co., Ltd.*, No. 6:20-cv-01174-ACC-EJK, 2020 WL 5939172, at *4 (M.D. Fla. Sept. 24, 2020) ("Plaintiff has stated a plausible claim at this juncture."); Order, *Francois Inc. v. Cincinnati Ins. Co.*, No. 20CV201416 (Oh. Cnty. Ct. Sept. 29, 2020) ("The complaint states claims which arguably fit the terms and conditions of the insurance policy[.]") (attached as **Exhibit G**).

Second, even if the period of restoration could be interpreted to limit property loss or damage to that which "should be repaired, rebuilt, or replaced," Chloe's Cafe's business income coverage has nonetheless been triggered. The term "repair" is defined to mean "to restore to a good or sound condition after decay or damage; mend," "to restore or renew by any process of making good, strengthening, etc." and "to remedy; make good; make up for."[14] Similarly, it is defined to mean: "to restore to a sound or healthy state: RENEW; to make good: compensate for: REMEDY."[15] The term "rebuild" is defined to mean "to restore to a previous state."[16] It is also defined to mean: "to replace, restrengthen, or reinforce" and "to revise, reshape, or reorganize."[17] The term "replace" is defined to mean "to restore to a former place or position,"[18] and similarly to mean "[t]o put back into a former position or place" and "[t]o restore or return."[19] None of these dictionary definitions require or impose a physical alteration component.

The definition of "period of restoration," is not evidence that the insured property must be physically altered. It is merely the time period from when the insured suffered the loss or damage until the insured's business resumed or should have resumed. *Ingenico Holdings LLC v. Ace Am. Ins. Co.*, 921 F.3d 803, 820-21 (9th Cir. 2019). Thus, it addresses the measure of the insured's losses, not whether the insured suffered "loss" or "damage." That the government, not Plaintiffs, controls the repair date is irrelevant. Further, if "period of restoration" was intended to mean that "direct physical loss of or damage to" property requires physical alteration of the property, that would be evidence that the policy is ambiguous. If Defendant intended for "loss of" property to require physical alteration to property, it should have written a definition for "physical loss" into

---

[14] *Repair*, Dictionary, https://www.dictionary.com/browse/repair?s=t (last visited November 10, 2020).

[15] *Repair*, Merriam-Webster, https://www.merriam-webster.com/dictionary/repair (last visited November 10, 2020).

[16] *Rebuild*, Merriam-Webster, https://www.merriam-webster.com/dictionary/rebuild (last visited November 10, 2020).

[17] *Rebuild*, Dictionary, https://www.dictionary.com/browse/rebuild?s=t (last visited November 10, 2020).

[18] *Replace*, Merriam-Webster, https://www.merriam-webster.com/dictionary/replace (last visited November 10, 2020).

[19] *Replace*, Free Dictionary, https://www.thefreedictionary.com/replace (last visited November 10, 2020).

the policy, not slipped a definition or qualification upon "loss" through the back door in the definition of a separate term in the policy.

Moreover, the loss of functionality and loss of utility that occurred here can be repaired, rebuilt, or replaced. Each of these three terms are defined in terms of restoring that which was lost, and each applies to the facts of this case. The loss of functionality and utility must be repaired: it must be restored to a good or sound condition; it must be rebuilt: restored to its previous state; and it must be replaced: restored to its previous position or put back to its former place. That which was lost—on-premises dining—had to be repaired, rebuilt or replaced. Therefore, no language within the period of restoration provision limits recovery for Chloe's Cafe's business income loss. Rather, this interpretation fulfills the policy's intent to provide coverage until the "Resumption of Operations" after a state of lost functionality has been repaired or replaced. Doc. 11-5 at 135.

### 5. Legislative and Executive Enactments Establishing that the Outbreak of COVID-19 is "Direct Physical Loss or Damage" Further Confirm Plaintiff Has Sufficiently Stated a Claim

As noted above, in deciding a motion to dismiss, this Court may consider any evidence that is the proper subject of judicial notice. Statutes, enactments, and laws, of course, fall within this category. Courts also look to statutes, enactments, and law to determine the meaning of insurance policy terms. *See, e.g., Factory Mut. Ins. Co. v. Peri Formworks Sys.*, 223 F. Supp. 3d 1133, 1138 (D. Or. 2016). Federal courts in particular, often recognize the superior fact-finding capabilities of legislative bodies and executive agencies compared to courts. *See e.g., United States v. Mead Corp.*, 533 U.S. 218, 227 (2001).

Here, numerous legislative and executive bodies in the states of California, New York, Florida, Texas, Colorado and North Carolina issued fact-based determinations that make clear that COVID-19 results in direct physical loss or damage. See Composite **Exhibit C.** Given these legislative and executive findings, by alleging that the Plaintiffs suffered "direct physical loss or damage"—and, as explained above, they did much more than that—the Plaintiffs adequately state a claim for relief.

**D.** **Chloe's Cafe's Claims Are Covered by the Policy's "Civil Authority" Provision**

    **1.** **Chloe's Cafe Sufficiently Alleges Entitlement to its "Civil Authority" Coverage**

The elements for triggering civil authority coverage require that the insured suffer a loss of business income: (1) caused by an action of a civil authority that (2) prohibits access to the described premises (3) due to a direct physical loss or damage to property other than at the described premises, and (4) the loss of or damage to the property other than at the described premises must be caused by or result from a "covered cause of loss." *Narricot Indus., Inc. v. Fireman's Fund Ins. Co.*, No. 01-cv-4679, 2002 WL 31247972, at *4 (E.D. Pa. Sept. 30, 2002).

The Complaint satisfies all of these elements. Defendant does not argue that the Closure Orders (Compl., ¶ 45) are not actions of civil authority, so there is no dispute as to the first element. Second, those orders prohibited access to Chloe's Cafe's business property by its customers, the source of Chloe's Cafe's business income. *Id.* Third, Chloe's Cafe alleges that the orders were issued as a result of COVID-19 proliferation near and around their restaurant. *Id.* Finally, much like how Chloe's Cafe's losses should be covered under the policy, the losses by surrounding businesses amount to "direct physical loss" under the policy. *Id.*

The *Studio 417* court reached the same conclusion, holding that the plaintiffs' allegations of actual loss were "applicable to other property" and that the civil authority orders included "property other than" the plaintiffs' premises. 2020 WL 4692385, at *7. Other courts also have found non-structural damage sufficient to trigger civil authority coverage. *See, e.g.*, *Sloan v. Phoenix of Hartford Ins. Co.*, 207 N.W.2d 434, 437 (Mich. Ct. App. 1973) (concluding that physical damage to the premises was not a prerequisite for the payment of benefits under the business-interruption policy).

Defendant's authority against civil authority coverage is distinguishable on the facts or the applicable policy language. For example, in *Syufy Enters. v. Home Ins. Co. of Ind.*, No. 94-cv-756, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995), the court found no civil authority coverage because the city curfew was a preemptive measure to prevent a future threat—looting and riots—

that had not yet happened. *Id.* at *1–*2. Here, by contrast, COVID-19 was not a "potential threat" at the time of the civil authority orders, but an active pandemic that had already spread throughout Chloe's community, state and the entire country. Compl., ¶¶ 34–42.

Defendant's reliance on *United Air Lines, Inc. v. Ins. Co. of Pa.*, 439 F.3d 128 (2d Cir. 2006), suffers from similar flaws. There, the airline was not entitled to civil authority coverage when the government grounded flights following the 9/11 terrorist attacks. *Id.* at 130. Not only are these circumstances factually distinguishable like in *Syufy Enterprises*, but the policy language in *United Air Lines* also materially differed: that civil authority provision required the insured's loss to be the "direct result of damage to adjacent premises" *Id.* at 129. Here, the policy's Civil Authority provision is much broader, providing Chloe's Café coverage for their losses "due to direct physical loss of or damage to property, other than at the described premises." Doc. 11-5 at 124.

Defendant's reliance on *Philadelphia Parking Authority v. Federal Ins. Co.*, 385 F. Supp. 2d 280 (S.D.N.Y 2005), is also unavailing. There, the FAA's post-9/11 emergency order grounding air traffic did not prohibit any access to parking structures; the plain language of the FAA's order showed that it was directed to aircraft operators, not parking garages. *Id*. Here, by contrast, the Closure Orders directly prohibited customers and workers from accessing Chloe's Cafe's own premises, a situation that falls squarely within the coverage provided by the policy's Civil Authority provision. Moreover, while the plaintiff's claims in *Philadelphia Parking* were premised solely on the economic losses from the slowdown in business from flight stoppage, *id.* at 285, here Chloe's Cafe's losses are a direct consequence of the Covered Causes of Loss.

Notably, too, none of the cases Defendant relies on to argue that Chloe's Cafe's claim for Civil Authority Coverage should be dismissed involved a Rule 12(b)(6) motion to dismiss; instead, the cases were decided on summary judgment after the parties had fully engaged in discovery. *See Syufy Enters.*, 1995 WL 129229, at *2 (denying coverage on summary judgment because general curfews did not prohibit access to plaintiff's theatre and, instead, plaintiff voluntarily chose to close its business); *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d

683, 686 (5th Cir. 2011) (finding on summary judgment that plaintiff failed to prove a direct causal link between any prior property damage and the evacuation order). Here, the parties have not fully engaged in discovery and summary judgment is premature.

### 2. The Policy Does Not Require a Complete Prohibition of Access.

In *Studio 417*, the court found that the closure orders sufficiently triggered the subject policy's civil authority provision by mandating "'that all inside seating is prohibited in restaurants,' and that 'every person in the State of Missouri shall avoid eating or drinking at restaurants,' with limited exceptions for 'drive-thru, pickup, or delivery options.'" *Studio 417*, 2020 WL 4692385, at *7. Chloe's Café alleges identical restrictions on their restaurant in California's Closure Orders and they need not plead an absolute prohibition on business operation or entry to invoke the policy's civil authority coverage, especially considering the devastating and permanent impact on their business. Compl., ¶ 44.

The circumstances in *Narricot* also were analogous, where local civil authorities prohibited operation of an industrial plant in the wake of Hurricane Floyd. *Narrciot,* 2002 WL 31247972, at *4. As held in *Narricot*, the phrase "prohibits access" does not require that the civil authority completely forbid occupancy of the premises or even all business operation; once again, the policy terms are subject to reasonable interpretation based on their "plain and ordinary meaning." *Estate of Neff*, 271 F. App'x at 226. To "prohibit" does not just mean to "forbid"; it can also mean to "hinder," or "to cause delay, interruption, or difficulty in," or "to be an obstacle or impediment."[20] No language in the policy requires a *complete* prohibition on access to Chloe's business property, which is why the policy's "Extra Expense" provision provides for "minimiz[ing] the suspension of business," and "suspension" is explicitly defined as "the *slowdown or* cessation of business activities." Doc. 11-5 at 123, ¶ g(3)(a) (emphasis added).)

---

[20] Prohibit, https://www.dictionary.com/browse/prohibit; Hinder, https://www.dictionary.com/browse/hinder.

To the extent the Court believes the clause is susceptible to Defendant's proposed construction, then it is faced with two reasonable constructions establishing ambiguity. *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 867 (1993). It is well established under Ninth Circuit law that such ambiguity must be resolved by construing the clause strictly against the drafter, here Defendant. *See, e.g., Blankenship v. Liberty Life Assur. Co. of Bos.*, 486 F.3d 620, 625 (9th Cir. 2007); *Lang v. Long-Term Disability Plan of Sponsor Applied Remote Tech., Inc.*, 125 F.3d 794, 799 (9th Cir. 1997) (explaining that "[a]mbiguities in ordinary insurance contracts are construed against the insurance company").

## CONCLUSION

For the reasons set forth herein, Defendant's Motion to Dismiss Complaint under Rule 12(b)(6), and in the alternative, Motion for Summary Judgment under Rule 56, should be denied.

Dated: November 16, 2020                    Respectfully submitted,

By: _/s/ Victor J. Jacobellis_____

Victor J. Jacobellis
CA Bar No. 278988
vjacobellis@merlinlawgroup.com
Daniel J. Veroff
CA Bar No. 291492
dveroff@merlinlawgroup.com
**MERLIN LAW GROUP**
1160 Battery St East, Suite 100
San Francisco, CA 94111
Telephone: (415) 851-2300
Facsimile: (415) 960-3882

William F. "Chip" Merlin, Jr.
CA Bar No. 275936
cmerlin@merlinlawgroup.com
**MERLIN LAW GROUP**
777 S. Harbour Island Blvd., Suite 950
Tampa, FL 33602
Telephone: (813) 229-1000
Facsimile: (813) 229-3692

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT UNDER RULE 12(B)(6), AND IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT UNDER RULE 56**

Adam M. Moskowitz
(*Pro Hac Vice* Admission Pending)
Florida Bar No. 984280
adam@moskowitz-law.com
Adam A. Schwartzbaum
(*Pro Hac Vice* Admission Pending)
Florida Bar No. 93014
adams@moskowitz-law.com
Howard M. Bushman
(*Pro Hac Vice* Admission Pending)
Florida Bar No. 0364230
howard@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
Telephone: (305) 740-1423

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT UNDER RULE 12(B)(6), AND IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT UNDER RULE 56**