UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| STEVEN BAKER AND MELANIA KANG D/B/A CHLOE'S CAFÉ, a California general partnership, individually and behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OREGON MUTUAL INSURANCE COMPANY,<br><br>Defendant. | Case No. 20-cv-05467-LB<br><br>**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: ECF No. 48 |

## INTRODUCTION

The plaintiffs have a restaurant in San Francisco called Chloe's Cafe. In response to the COVID-19 pandemic, San Francisco prohibited indoor dining, and the plaintiffs lost money as a result. They submitted a claim for their business losses to their insurer, Oregon Mutual Insurance Company. Oregon Mutual denied the claim on the ground that the policy covered only business losses resulting from "direct physical losses" causing "direct physical loss of or damage to the insured property." The plaintiffs then sued — on behalf of themselves and a nationwide class — for a declaratory judgment on the issue of coverage. The court previously dismissed the plaintiffs' complaint on the ground that the complaint's allegations — that the virus caused physical losses by attaching to surfaces for a

ORDER – No. 20-cv-05467-LB

prolonged period of time — did not plausibly plead a direct physical loss of or damage to the property and that the policy thus did not cover the business losses. To cure this deficiency, the amended complaint added allegations that "hazardous human respiratory droplets" damaged the property and "posed an immediate danger to any person(s) physically present on the premises."[1] The new allegations do not plausibly plead direct physical loss either. The court grants Oregon Mutual's motion to dismiss the amended complaint because the policy does not cover the losses.

## STATEMENT

Under the policy's Business Loss provision, Oregon Mutual will pay for lost business income that (1) Chloe's Cafe "sustain[s] due to the necessary suspension" of its operations during the "period of restoration" (2) caused by "direct physical loss of or damage to" the insured property. The loss or damage "must be caused by or result from a Covered Cause of Loss." "Covered Cause of Loss" is defined as non-excluded "[r]isks of direct physical loss."[2] Suspension is defined as (1) the partial slowdown or cessation of business activities, and (2) the premises (in part or all) are rendered untenantable, if coverage for Business Income applies.[3] Similarly, the policy specifies that Oregon Mutual will pay for necessary "Extra Expenses" incurred during the "period of restoration" incurred from direct physical loss to or damage from a "Covered Cause of Loss." Oregon Mutual also must pay for "the actual loss of Business Income . . . and necessary Extra Expense caused by action of civil authority that prohibits access" to the insured property "due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss."[4] The "period of restoration" (1) begins 72 hours after the time of direct physical loss or damage (for Business Income) and immediately after the time of direct physical

---

[1] First Am. Compl. (FAC) – ECF No. 45 at 9 (¶ 45). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] BI Form, Ex. 5 to Oregon Mutual's RJN – ECF No. 11-5 at 54 (§ I.A.3.). The court considers the insurance policy under the incorporation-by-reference doctrine and takes judicial notice of the existence of other courts' opinions. Fed. R. Evid. 201; *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

[3] *Id.* at 58 (§ I.A.5.f.(3)(a)–(b)).

[4] *Id.* at 59 (§ I.A.5.i.).

ORDER – No. 20-cv-05467-LB          2

loss or damage (for Extra Expense Coverage) and (2) ends on either the date when the property is "repaired, rebuilt, or replaced" or the date when business resumes at a new location.[5]

The court dismissed the plaintiffs' first complaint on the ground that the virus did not cause direct physical loss and that the policy thus did not cover lost business income or expenses resulting from the closure orders that the government issued in response to the COVID-19 pandemic.[6] The plaintiffs amended the complaint to add allegations that "hazardous human respiratory droplets" caused a direct physical loss and sought a declaratory judgment and recovery of their business losses and expenses that resulted from the closure of the restaurant.[7] Oregon Mutual moved to dismiss the complaint on the ground that the virus was not a physical loss covered by the policy. The parties do not dispute the court's diversity jurisdiction for the plaintiff individually because the parties are diverse and the amount in controversy exceeds $75,000 and under CAFA because the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million.[8] 28 U.S.C. § 1332(a) & (d). All parties consented to magistrate-judge jurisdiction.[9] The court held a hearing on March 25, 2021.

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (cleaned up).

---

[5] *Id.* at 74–75 (§ I.H.8.a.(1)–(2)).

[6] Order – ECF No. 41 at 4–5.

[7] FAC – ECF No. 45 at 9 (¶ 45), 14–20 (¶¶ 69–101) & 20–21 (request for relief).

[8] *Id.* at 3 (¶¶ 4–8).

[9] Consents – ECF Nos. 6 and 23.

1  To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (cleaned up) (quoting *Twombly*, 550 U.S. at 557).

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1182 (9th Cir. 2016) (cleaned up).

## ANALYSIS

The plaintiffs contend that (1) presence of the virus on at the restaurant property is direct physical damage that triggers coverage for their business losses and (2) the pandemic, the physical presence of the COVID-19 virus, and the closure orders caused them to lose use of their property, creating a fact issue for the jury on physical loss or damage.[10] Oregon Mutual moved to dismiss on the ground that that coverage requires a "direct physical loss of or damage to property," and the majority view is that the presence of the virus is not direct physical loss or damage.[11] The weight of authority supports Oregon Mutual's position. The court follows that authority and grants the motion to dismiss.

A "direct physical loss" contemplates a change in the property. *MRI Health Care Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 776, 779 (2010). "For there to be a 'loss' within the meaning of the policy [that is covered by the Business Loss term], some external

---

[10] Opp'n – ECF No. 52 at 10 (characterizing this as reading the allegations in the complaint in the light most favorable to the plaintiffs), 11–21 (argument).

[11] Mot. – ECF No. 48 at 5–7; Reply – ECF No. 54 at 10 (addressing combination-of-factors argument).

force must have acted upon the insured property to cause a physical change in the property, i.e., it must have been 'damaged' within the common understanding of that term." *Id.* at 780.

The complaint does not plausibly allege that the closure orders were directed at property damage that resulted from the COVID-19 virus. There are no allegations that an external force caused a physical change that required (for example) repairs that would be covered by the Business Loss provision. *Id.* That is because there was no property damage. Instead, the lost income and expenses resulted from the closure orders, which closed businesses because of the health risks to persons (as opposed to closing them because of property damage).

For that reason, the majority view — including every court in this district that has examined the issue — is that "direct physical loss" provisions, like the ones in the insurance contract here, do not cover lost business income or expenses resulting from closure orders like the one here. *See, e.g.*, *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.,* No. 20-CV-04434 JSC, 2020 WL 5642483, at *3 (N.D. Cal. Sept. 22, 2020) ("Nothing in the complaint . . . supports an inference that . . . the Closure Orders themselves caused damage"); *Mudpie, Inc. v. Travelers Cas. Ins. Co.*, 20-CV-03213-JST, 2020 WL 5525171, at *5 (N.D. Cal. Sept. 14, 2020).[12]

In a recent case in this district, the court addressed similar allegations that the COVID-19 virus caused physical damage that triggered coverage under the Business Loss provision. *Mortar & Pestle Corp. v. Atain Specialty Ins. Co.*, --- F. Supp. 3d ---, No. 20-CV-03461-MMC, 2020 WL 7495180, at *4 (N.D. Cal. Dec. 21, 2020). The court held that "a detrimental economic impact, such as loss of use, unaccompanied by a distinct, demonstrable, physical alteration of the property, is insufficient" to state a claim for coverage under the Business Loss provision. *Id.* at *3 (cleaned up). The court rejected the insured's argument that the COVID-19 virus caused a "direct physical loss of or damage to" its restaurant. *Id.* at *4. Like the plaintiffs here, the insured in *Mortar and Pestle* alleged that COVID-19 "intruded upon the property" and damaged it. *Id.* Those conclusory allegations did not state a claim. *Id.* Instead, the complaint's allegations indicated that the insured was "seeking loss of income caused by a risk of contagion rather than the loss of property caused by the physical presence

---

[12] Order – ECF No. 41 at 4–5 (addressing the cases).

of COVID-19." *Id.* (citing allegations that the high probability of illness and contamination prevented the "full physical use of the property"). Moreover, the court held, the presence of the virus was not "direct physical loss of or damage to" the property because contamination can be prevented by sanitation and cleaning. In sum, the virus did not cause "physical alteration" or "physical change in the condition of property," and the insured did not state a claim for coverage for its business losses resulting from the closure orders. *Id.* (quotations and citations omitted).

The complaint here similarly alleges that the "hazardous human respiratory droplets [] posed an immediate danger to any person(s) physically present on the premises" and that it was "impracticable to operate [the] business without immediately exposing the insured premises to" the hazardous droplets.[13] Like the allegations in *Mortar and Pestle*, the allegations do not plausibly plead that the virus caused physical loss or damage to the restaurant, and the plaintiffs thus do not plausibly plead a claim. *Id.* Other federal courts that have addressed the "respiratory droplets" and physical-damage theories have reached the same conclusion. *See, e.g.*, *Wellness Eatery La Jolla LLC v. The Hanover Ins. Grp.*, No. 20cv1277-AJB-RBB, 2021 WL 389215, at * 6–7 (S.D. Cal. Feb. 2, 2021) (rejecting "respiratory droplet" theory of physical loss or damage and holding that the presence of COVID-19 did not "qualif[y] as physical damage to property because the virus harms human beings, not property") (collecting cases); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, No. 20-CV-907-CAB-BLM, 2020 WL 5847570, at *1 (S.D. Cal. Oct. 1, 2020); *Karen Trinh, DDS, Inc. v. State Farm Gen. Ins. Co.*, No. 5:20-cv-04265-BLF, 2020 WL 7696080, at *4 (N.D. Cal. Dec. 28, 2020); *HealthNOW Med. Ctr., Inc. v. State Farm Gen. Ins. Co.*, No. 20-cv-04340-HSG, 2020 WL 7260055, at *2 (N.D. Cal. Dec. 10, 2020); *Founder Inst. Inc. v. Hartford Fire Ins. Co.*, No. 20-cv-04466-VC, 2020 WL 6268539, at *1 (N.D. Cal. Oct 22, 2020).

Moreover, the court's earlier order collected cases holding that the virus did not cause physical loss or damage.[14] Since then, other courts have reached similar conclusions. *See, e.g.*, *Out West Rest. Grp. v. Affiliated FM Ins. Co.*, No. 3:20-cv-06786-TSH, 2021 WL 1056627, at *4 (N.D. Cal. Mar.

---

[13] FAC – ECF No. 45 at 9 (¶ 45).

[14] Order – ECF No. 41 at 4–5 (collecting cases).

19, 2021); *Westside Head & Neck v. The Harford Fin. Servs. Grp., Inc.*, No. 20-cv-06132-JFW (JCx), 2021 WL 1060230, at *5 (C.D. Cal. Mar. 19, 2021); *Protégé Rest. Partners LLC v. Sentinel Ins. Co., Ltd.*, No. 20-cv-03674-BLF, 2021 WL 428653, at *4 (N.D. Cal. Feb. 8, 2021); *Colgan v. Sentinel Inc. Co., Ltd.*, No. 20-cv-4780-HSG, 2021 WL 472694, at *3 (N.D. Cal. Jan. 26, 2021) (collecting cases); *Unmasked Mgmt., Inc. v. Century-Nat'l Ins. Co.*, No. 3:20-cv-01129-H-MDD, 2021 WL 242979, at *6 (S.D. Cal. Jan. 22, 2021); *Pez Seafood DTLA, LLC v. The Travelers Indem. Co.*, No. 20-cv-04699-DMG (GJSx), 2021 WL 234355, at *5 (C.D. Cal. 2021); *Kevin Barry Fine Art Assocs. v. Sentinel Ins. Co., Ltd.*, No. 20-cv-04783-SK, 2021 WL 141180, at *6 (N.D. Cal. Jan. 13, 2021) (collecting cases); *Ba Lax, LLC v. Hartford Fire Ins. Co.*, 2:20-cv-06344-SVW-JPR, 2021 WL 144248, at *3–4 (C.D. Cal. Jan. 12, 2021); *O'Brien Sales & Mktg., Inc. v. Transp. Ins. Co.*, No. 20-cv-02951-MMC, 2021 WL 105772, at *4–5 (N.D. Cal. Jan. 12, 2021) (collecting cases).

The plaintiffs counter that other courts reach different outcomes.[15]

In *P.F. Chang's*, for example, the superior court denied the insurance company's motion for judgment on the pleadings in a case involving a restaurant's claim that the COVID-19 virus caused physical loss of or damage to the restaurant. It held that the restaurant met

> [t]he requirement of "physical loss or damage to" property [] in one or more ways, including by virtue of the "physical loss or damage to" P.F. Chang's dining rooms or other qualifying property caused by (i) the actual or potential presence of virus in the air (whether in droplet nuclei, aerosols, droplets, or otherwise) in the vicinity of P.F. Chang's restaurants or other qualifying buildings; (ii) the necessity of modifying physical behaviors through the use of social distancing, avoiding confined indoor spaces, and/or not congregating in the same physical area as others, whether such practices were mandated by government order or not, in order to reduce or minimize the potential for viral transmission; (iii) government orders requiring that physical spaces such as P.F. Chang's dining room be shut down; and/or (iv) the need to mitigate the threat or actual physical presence of virus on door handles, tables, silverware, surfaces, in heating and air conditioning systems and any other of the multitude of places virus has or could be found.

*P.F. Chang's China Bistro, Inc. v. Certain Underwriters at Lloyd's of London*, Case No. 20STCV17169, slip op. at 4–5 (Cal. Sup. Ct. Feb. 4, 2021) (noting that it was not bound to follow decisions of lower federal courts). In *Goodwill Industries*, the superior court also overruled an

---

[15] Opp'n – ECF No. 52 at 9–18.

insurance company demurrer to an insured's claim that the COVID-19 virus caused direct physical loss. *Goodwill Indus. of Orange Cnty. v. Phila. Indem. Ins. Co.*, No. 30-2020-01169032-CU-IC-CXC, slip op. at 2–3 (Cal. Super. Ct. Jan. 28, 2021) (federal cases not binding and "were decided under a different standard").

Oregon Mutual distinguishes the cases as decided under a different standard.[16] In any event, they do not change the conclusion here that — as most courts hold — the virus did not cause physical loss or damage.

Citing *In re Society Insurance Company*, the plaintiffs also contend that a combination of factors — the pandemic, the physical presence of the COVID-19 virus, and the closure orders — caused them to lose use of their property. The pandemic, they assert, is the proximate cause of their losses, and this creates a fact issue for the jury on physical damage.[17] *In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.,* No. 20 C 02005, 2021 WL 679109, at *8 (N.D. Ill. Feb. 22, 2021). They also contend that the prohibition of indoor dining is a physical loss, even if it is not physical damage, because it is a loss of functionality.[18] Oregon Mutual responds that the analysis is the same: the requisite direct physical loss is absent.[19] Again, the weight of authority is that the virus does not cause physical loss of or damage to property under the Business Loss provision.

In sum, the plaintiffs do not plausibly plead a claim for coverage of their business losses and expenses because no physical loss of or damage to the restaurant caused the suspension of their

---

[16] Reply – ECF No. 54 at 16.

[17] Opp'n – ECF No. 52 at 10–12.

[18] *Id.* at 13–18 (collecting cases).

[19] Reply – ECF No. 54 at 10, 12. Oregon Mutual also points to other policy exclusions that apply: (1) loss caused by the enforcement of an ordinance or law "[r]egulating the construction, *use*, or repair *of any property*" and losses caused by "[a]cts or decisions, including the failure to act or decide, of an person, group, organization, or governmental body;" and (2) "loss or damage caused by or resulting from any of the following: . . . **Consequential Loss**[:] . . . loss of use or loss of market." Reply – ECF No. 54 at 12 (citing BI Form, Ex. 5 to Oregon Mutual's RJN – ECF No. 11-5 at 65 (§ I.B.2.b.)). The plaintiffs object to the argument on the ground that Oregon Mutual raised it for the first time in the reply brief. Mot. to Strike – ECF No. 56. Oregon Mutual counters that applicability of the exclusions is not a new issue, it raised them in the first-round motion to dismiss, and its arguments are a fair response to the plaintiffs' opposition. Opp'n – ECF No. 57 at 2. The court does not need to consider the policy exclusions to reach the conclusions in this order.

business. Instead, the losses resulted from the closure orders. As the court held previously, this is not a covered claim.

The plaintiffs also contend that the policy's Civil Authority provision covers their business losses.[20] The parties agree that the provision covers a loss of business income (1) caused by an action of civil authority that (2) prohibits access to the described premises (3) due to a direct physical loss or damage to property other than at the described premises, and (4) the loss or damage to property other than at the described premises must be caused by or result from a "covered cause of loss."[21] *Mortar & Pestle*, 2020 WL 7495180, at *6–7. As with the Business Income provision, the Civil Authority provision requires "direct physical loss of or damage to" property. For the same reasons set forth above, the plaintiffs do not plausibly plead physical loss or damage about any other property. *Id.* at *7. Moreover, the shutdown orders were issued to stop the spread of COVID-19 and were not about loss of or damage to property. *Id.*; *Mudpie*, 2020 WL 5525171 at *7. The plaintiffs do not plausibly plead coverage under the Civil Authority provision. *Mortar & Pestle*, 2020 WL 7495180, at *7.

## CONCLUSION

The court grants the motion to dismiss. The previous dismissal was with leave to amend to cure the complaint's deficiencies, and the plaintiffs did not cure the deficiencies. The court is sympathetic to the plaintiffs' predicament, but the deficiencies cannot be cured. The dismissal is thus is without leave to amend.

This disposes of ECF No. 48.

**IT IS SO ORDERED.**

Dated: March 25, 2021

LAUREL BEELER
United States Magistrate Judge

---

[20] Opp'n – ECF No. 52 at 21–24.

[21] *Id.* at 21–22 (citing *Narricot Indus., Inc. v. Fireman's Fund Ins. Co.*, No. CIV.A.01-4679, 2002 WL 31247972, at *4 (E.D. Pa. Sept. 30, 2002)); Reply – ECF No. 54 at 11.